THE STATE OF OHIO, APPELLANT, *v.* WOLONS, APPELLEE.

[Cite as State *v.* Wolons (1989), 44 Ohio St. 3d 64.]

(No. 88-209—Submitted March 7, 1989—Decided July 5, 1989.)

66

*John T. Corrigan,* prosecuting attorney, and *Paul J. Myles,* for appellant.

*Bernard, Haffey & Bosco Co., L.P.A.,* and *J. Ross Haffey, Jr.,* for appellee.

MOYER, C.J. We first must determine whether the defendant waived his right to appeal the denial of his request that the jury be instructed on the law of intoxication. We are asked to extend to criminal cases our holding in *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 65 O.O. 2d 129, 303 N.E. 2d 81.

In *Presley* we considered Civ. R. 51(A), which contains language almost identical to Crim. R. 30(A). Under both rules, a party "may not assign as error the giving or failure to give any instruction ['instructions,' in Crim. R. 30(A)] unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection."

Civ. R. 51 has been construed in the same manner as Fed. R. Civ. P. 51. A party is deemed not to have waived his objection to the court's failure to give a requested jury instruction or to the charge actually given if the record affirmatively shows that the trial court has been fully apprised of the correct law governing a material issue in dispute. *Presley, supra,* at 33, 65 O.O. 2d at 131, 303 N.E. 2d at 84-85. This interpretation of the rule is consistent with the rule's purpose because the distinction between "general" and "special" charges has been abolished by the modern rules of practice, and if a party makes his position sufficiently clear to give the court an opportunity to correct a mistake or defect, then the rationale for formally objecting is no longer present.

This interpretation is applicable when reviewing a trial court's failure to give a requested jury instruction in criminal cases pursuant to Crim. R. 30(A), since the language of Crim. R. 30(A) regarding objections is virtually identical to Civ. R. 51(A). Therefore, in a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto. Crim. R. 30(A).

The defendant's counsel and the trial court had an extensive discussion of the cases relevant to the issue of whether the trial court should give the requested jury instruction on intoxication. Defendant attempted to persuade the court that the evidence and cases supported his position, and it is clear that the trial court understood his objection to the court's refusal to so instruct. We therefore hold that defendant did not waive his objection by failing to object, on the record, at the end of his discussion with the trial court.

Because we have adopted the *Presley* rationale for criminal cases and Crim. R. 30(A), we need not consider the propriety of the court of appeals' decision to determine the issue based on the plain-error rule pursuant to Crim. R. 52(B).

We next consider whether the trial court erred in refusing defendant's request that the jury be instructed that defendant raised voluntarily induced intoxication as a defense to the specific intent element of the crime of murder pursuant to R.C. 2903.02.

In *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 22 O.O. 3d 259, 428 N.E. 2d 410, we restated Ohio's concurrence with the general rule in American jurisprudence that voluntary intoxication is not a defense to any crime. We also recognized, however, that intoxication may be considered in determining whether the accused was capable of forming the specific intent essential to the charged crime. *State* v. *French* (1961), 171 Ohio St. 501, 14 O.O. 2d 437, 172 N.E. 2d 613, certiorari denied (1961), 366 U.S. 973. Notwithstanding this exception, we reiterate our view, stated in *Fox, supra,* at 56, 22 O.O. 3d at 261, 428 N.E. 2d at 413, that it is unnecessary to promulgate a rule to regulate trial courts in this regard. It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a jury instruction on intoxication where the accused claims that his inebriated condition negated the mental state required as an element of the crime charged. See *State* v. *Hipkins* (1982), 69 Ohio St. 2d 80, 23 O.O. 3d 123, 430 N.E. 2d 943; *Mann* v. *Gray* (N.D. Ohio 1985), 622 F. Supp. 1225, 1232.

Accordingly, the proper standard of review for the reviewing court is whether the judge's refusal to instruct on intoxication was an abuse of discretion under the facts and circumstances of the case. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149. See, also, *State* v. *Weaver* (1988), 38 Ohio St. 3d 160, 527 N.E. 2d 805.

Testimony was presented at trial to support Wolons' claim of intoxication. Klein and defendant stated that in the three hours between 4:30 p.m. and approximately 7:30 p.m., defendant consumed about eight to twelve beers. Between leaving the Corner Cafe and arriving at defendant's apartment, approximately one and one-half hours elapsed. According to defendant, he drank one or two more beers, although the others did not recall consuming any alcohol. Corrao testified that when he left defendant at his apartment, no one in the group seemed intoxicated and defendant showed no signs that the alcohol had affected him. Although defendant testified that he was probably intoxicated when he arrived at his apartment the first time that evening, when asked if he was functioning well, he responded, "I guess so."

Sams and defendant testified that between approximately 9:30 p.m. and midnight, defendant drank about seven or eight more beers. After that time, Edward and Robert were alone until approximately 3:00 a.m., drinking. He remembered that he was standing at the kitchen sink cutting sausage for pizza, that he heard a noise, that he turned around with the knife still in his hand, and that "the knife went into * * * [Robert]." Defendant also remembered going to Klein's and Koester's apartments looking for help. He remembered what he was wearing and what his brother was wearing. He recalled throwing the knife against the dining room wall, and

flipping over the dining room table. Defendant also recalls talking to police officers and answering questions when they arrived. Although one of the police officers thought that defendant was intoxicated, the record overall indicates that he was not so intoxicated that he was not fully aware of the events taking place around him.

The only expert testimony presented at trial regarding the issue of intoxication was that of a deputy coroner. A blood sample taken from the victim at the hospital revealed an ethyl alcohol content of ".24 grams per cent [*sic*]." The deputy coroner testified that blood-alcohol levels of ".15 to .25" percent are in the stimulation or excitement stage of intoxication, meaning that "the normal cortical expression of behavior is released." He testified that the next stage of intoxication, produced by blood-alcohol levels of .25 to .35 percent, is the confusion stage. It is characterized by ob-

viously slurred speech and staggering gait. This testimony showed the possible stages of the victim's, not the defendant's, level of intoxication. But even were we to impute this same level of inebriation to defendant, it falls short of negating a conscious awareness of the circumstances and events that transpired on the night of the stabbing.

In view of these facts and circumstances, we cannot say that the trial court acted arbitrarily or unconscionably in refusing to issue a jury instruction on intoxication.

For these reasons, the judgment of the court of appeals is reversed, and the verdict of guilty is reinstated.

*Judgment reversed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.