[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
David Dickens appeals from his conviction and sentence for Aggravated Menacing, Using Weapons While Intoxicated, and Disorderly Conduct.
On the evening of December 10, 1997, Renee Frost, Sharon Sharp, Katrina Vogelsong, and David Dickens gathered at Slammer's bar in Huber Heights, Ohio. All were drinking. After the bar closed, in the early morning hours of December 11, 1997, they went to Sharon Sharp's house which is located at 4781 Rittenhouse Drive, Huber Heights. Ms. Sharp had hired Dickens, who is a licensed security guard, to keep an eye on her home on account of recent thefts.
Shortly after 5:00 a.m., Renee Frost walked into one of the bedrooms and discovered Sharon Sharp lying on the floor. Sharp had passed out from severe intoxication. David Dickens was kneeling over Ms. Sharp, straddling her. Also present in that room was a five month old baby.
Ms. Frost asked Dickens what was going on. He told her to get out and leave him and Ms. Sharp alone. Dickens told Ms. Frost that she had been a "Butthead" all night. When Ms. Frost asked what Dickens meant by that, Dickens pulled out a semi-automatic handgun, cocked it, and placed it against Ms. Frost's head, forcing her head backwards. Ms. Frost was very frightened that Dickens might harm her, and she ran out of the room crying. Shortly thereafter, Renee Frost ran out of the house, leaving her two small children still inside that home.
Police were called to the scene and Dickens was apprehended a short distance away, walking from the scene. Dickens admitted to police that he had pointed a gun at Ms. Frost, but he claimed it was necessary to calm her down because she was out of control.
David Dickens was charged with Aggravated Menacing, R.C.2903.21(A), Using Weapons While Intoxicated, R.C. 2923.15(A), and Disorderly Conduct, R.C. 2917.11(B)(2). Following a trial to the court, Dickens was found guilty as charged on all counts and was sentenced according to law.
Dickens has timely appealed to this court from his convictions and sentences, claiming that his conviction of each offense is against the manifest weight of the evidence.
 FIRST ASSIGNMENT OF ERROR THE FINDING OF GUILTY ON THE CHARGE OF DISORDERLY CONDUCT, R.C. 2917.11(B)(2), IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Sufficiency of the evidence and weight of the evidence are distinct concepts to which different legal tests apply. State v.Thompkins (1997), 78 Ohio St.3d 380; State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported.
 "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires. The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence presented in a trial to prove the issue established by the verdict that was reached. State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof. Id.
 State v. Bradley (Oct. 2, 1997), Champaign App. No. 97-CA-03, unreported, at 7.
A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Statev. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. Bradley, supra.
David Dickens was found guilty of Disorderly Conduct, R.C.2917.11(B)(2), which provides:
 (B) No person, while voluntarily intoxicated, shall do either of the following:
* * *
 (2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.
Dickens first argues that the evidence presented at trial fails to prove that he was intoxicated. At trial, Dickens testified that he had consumed only two drinks. Moreover, the police did not give Dickens a breath alcohol test, and at no time did Dickens become argumentative or combative with the police.
A review of the trial transcript reveals that the victim, Renee Frost, testified that Dickens was intoxicated, based upon her observations of his conduct. Furthermore, two Huber Heights police officers testified that, based upon their observations, Dickens appeared to be intoxicated: he was staggering and swaying, he had a moderate to strong odor of alcohol, and his speech was slurred.
In light of this evidence, we cannot say that the evidence weighs heavily against a conviction, that the factfinder lost its way, or that a manifest miscarriage of justice has resulted. We do note that in finding Dickens guilty the trial court expressly stated that it did not believe Dickens or his witnesses.
Dickens additionally argues that the evidence fails to prove that he engaged in any conduct which created a risk of physical harm to himself or some other person. In support of this assertion Dickens characterizes the testimony of the victim, Renee Frost, as evidence which portrays only a remote possibility that Dickens might harm Frost, as opposed to a "significant possibility" which would be required to meet the statutory definition of "risk." R.C. 2901.01(7). We disagree with Dickens' characterization of the evidence.
Dickens' conduct in taking a loaded semi-automatic handgun, cocking it, and pressing it up against Frost's head in a bedroom where an infant was present, while Dickens was intoxicated, is clearly sufficient to create a significant possibility, i.e. a risk, of physical harm. On the state of this evidence we cannot say that the trier of fact lost its way or that a manifest miscarriage of justice has resulted. Martin, supra.
Dickens' conviction for violating R.C. 2917.11(B)(2) is not against the manifest weight of the evidence. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE FINDING OF GUILT ON THE CHARGE OF AGGRAVATED MENACING, R.C. 2903.21, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
David Dickens was found guilty of violating R.C. 2903.21(A), which provides:
 No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person, such other person's unborn, or a member of the other person's immediate family.
"Knowingly" is defined in R.C. 2901.22:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
Dickens argues that he could not have knowingly caused Renee Frost to believe that he would cause her serious physical harm if, in fact, he was intoxicated as the other charges filed against him by the State suggests. In other words, Dickens claims that his intoxication prevented him from forming the culpable mental state required for commission of this particular offense. See State v.Fox (1981), 68 Ohio St.2d 53; State v. Wolons (1989), 44 Ohio St.3d 64. The flaw in his argument is that the record contains no evidence that Dickens' level of intoxication was so severe as to preclude him from acting knowingly, that is, with an awareness that his conduct would probably cause a certain result. By his own testimony at trial, Dickens refutes any such notion, claiming that he had consumed only two drinks prior to these events.
Dickens additionally argues that the risk of any harm to Renee Frost which may have existed would not have involved "serious physical harm" as specified in R.C. 2903.21(A) because there is no evidence that the gun he used was loaded, or that Dickens threatened to strike Frost with the gun. However, contrary to Dickens' assertion, the evidence presented by the State does demonstrate that the gun Dickens cocked and pointed at Renee Frost's head was loaded. The gun contained fifteen rounds of live ammunition when it was later recovered from Dickens' automobile. Dickens' acts in taking a loaded gun, cocking it, and pressing it up against Renee Frost's head, are clearly sufficient to convey a threat of serious physical harm which intimidated and caused fear and apprehension in Ms. Frost. Once again, we cannot say that the evidence weighs heavily against a conviction, that the trier of fact lost its way, or that a manifest miscarriage of justice has resulted. Dickens' conviction for aggravated menacing is not against the manifest weight of the evidence. The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE FINDING OF GUILTY ON THE CHARGE OF USING WEAPONS WHILE INTOXICATED, R.C. 2923.15, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Dickens was convicted for violating R.C. 2923.15(A):
 No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance.
In asserting that his conviction for this offense is against the manifest weight of the evidence, Dickens points out that he testified at trial that he was not intoxicated on the night in question, that his gun was kept locked up in his car all day, and that he did not point his gun at Renee Frost.
Two Huber Heights police officers as well as Renee Frost testified that Dickens was intoxicated. Ms. Frost further testified that Dickens pulled out a gun, cocked it, and pressed it up against her head. A Huber Heights police officer testified that Dickens admitted pointing his gun at Renee Frost in order to calm her down, because she was out of control. The gun recovered by police from Dickens' automobile matched the description given by Renee Frost. That gun was fully loaded with fifteen live rounds of ammunition.
Dickens suggests that Renee Frost's testimony is not worthy of belief because she was intoxicated at the time of this incident, and may have had an ulterior motive for testifying against Dickens as she did. This court will not substitute its judgment, however, for that of the trier of fact on the issue of witness credibility where, as here, it is not apparent that the trier of fact lost its way. Bradley, supra. The trial court, sitting as the trier of fact, clearly indicated that it did not believe either Dickens or his witnesses.
On this record, Dickens has failed to demonstrate that his conviction for using weapons while intoxicated is against the manifest weight of the evidence. Martin, supra.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
WOLFF, J. and YOUNG, J., concur.