Charles Jason Church was found guilty of aggravated robbery with a firearm specification and sentenced accordingly. He appeals.
The evidence presented by the state at the July 14 and 15, 1997 joint trial of Church and Joseph Brown established the following.
During the early morning hours of October 29, 1996, while Chad Allen was walking to his car after work at the Fuel Mart station in South Vienna, Ohio, he was approached from behind by Brown, who forced him into his car at gunpoint and ordered him to follow a Cadillac driven by Church into Springfield. Jason Money and an unidentified fourth person were passengers in the Cadillac. On the drive to Springfield, Allen noticed that Brown was holding a gun in his lap. The Cadillac came to a stop in an alley in Springfield, and Allen was dragged out of his car and robbed at gunpoint of approximately $260 in cash and some jewelry. After being hit in the head and kicked in the ribs by Church and Brown, Allen fell to the ground, and Church pointed a gun at his head but did not shoot. Church, Brown, Money, and the unidentified fourth person drove away in the Cadillac. Allen drove his car approximately ten minutes to his friend Denzil Turner's home in Springfield, woke him up and told him about the incident. Turner escorted Allen to his home in South Vienna, where he immediately woke up his girlfriend, Roziland Wilfong, to tell her what had happened. He reported the incident to Officer William Schantz of the South Vienna police department on September 31, 1996. Church, Brown, and Money were indicted on one count of aggravated robbery with a firearm specification and one count of kidnapping. The charges against Money were dismissed with prejudice on February 20, 1997.
Church and Brown presented testimony to show that Allen had voluntarily followed them to Springfield to purchase cocaine.
The jury found Church not guilty of kidnapping and guilty of aggravated robbery with the firearm specification. The trial court sentenced Church to eight years incarceration for the aggravated robbery offense and an additional three years for the firearm specification. On delayed appeal, Church asserts seven assignments of error.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING HEARSAY EVIDENCE OVER APPELLANT'S OBJECTION.
Church contends that the trial court erred in overruling his objection to Turner's and Wilfong's hearsay testimony on Allen's statements about the incident.
The trial court allowed Turner and Wilfong to testify to Allen's statements pursuant to the Evid.R. 803(2) excited utterance exception to the hearsay rule. Brown raised this same issue on direct appeal, and we determined that the trial court had not abused its discretion in admitting the hearsay testimony under the excited utterance exception. See State v. Brown (Sept. 25, 1998), Clark App. No. 97-CA-0092, unreported. Based on our analysis in Brown, supra, Church's first assignment of error is overruled.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO CHARGE THE JURY IN ACCORDANCE WITH R.C. 2923.03(D).
Church contends that, pursuant to R.C. 2923.03(D), the trial court should have cautioned the jury on Money's credibility because, having been originally indicted as a principal offender in the incident and then having all charges against him dismissed, Money was an alleged accomplice who "had much to gain by testifying against Appellant."
The record does not contain a written request for an R.C.2923.03(D) instruction, see Crim.R. 30, although it appears that Church verbally asked for the instruction during the course of trial. Based on its finding that Money "was not an accomplice," the trial court refused Church's request, and Church did not thereafter object to the trial court's failure to instruct on accomplice testimony. The state argues that Church waived the alleged error of the trial court's failure to give the accomplice instruction by failing to file a written request for the instruction and failing to formally object to the trial court's refusal to give the instruction before the jury retired. In our judgment, however, Church complied with Crim.R. 30(A) and thus preserved the alleged error for appeal because the record affirmatively demonstrates that the trial court was "fully apprised of the law and defense counsel's requests." State v.Mack (1998), 82 Ohio St.3d 198, 199-200, citing State v. Wolons
(1989), 44 Ohio St.3d 64, paragraph one of the syllabus.
R.C. 2923.03(D) provides:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
The issue before us is whether the trial court erred in concluding that Money was not an accomplice and thus not instructing the jury in accordance with R.C. 2923.03(D). In Statev. Schlupe (Apr. 10, 1991), Summit App. No. 14645, unreported, the appellate court rejected the defendant's claim of entitlement to the accomplice instruction upon his mere allegation "that a witness holds such a status." The Schlupe court reaffirmed its prior holding in State v. Dapice (1989), 57 Ohio App.3d 99, that an accomplice instruction should be given when "the record supports a conclusion that a witness was an accomplice." Another appellate court held that "it was incumbent upon the court to instruct the jury in compliance with R.C. 2923.03(D) if, upon the evidence adduced at trial, reasonable minds could have concluded that [the witness] was an accomplice as defined under R.C.2923.01(A)." State v. Williams (July 27, 1988), Hamilton App. No. C-870384, unreported, overruled on other grounds in State v.Johnson (Mar. 26, 1997), Hamilton App. No. C-960583, unreported.
In this case, Money testified that, although he had seen the gun in the glove compartment of the car earlier in the evening, it had been his impression that "Chad was going to follow [Brown] to get some cocaine" up until Brown had talked about robbing Allen shortly before Allen got off work at Fuel Mart. Money stated that he had not done anything to prevent the offenses or to remove himself from the situation because he was intoxicated at the time and "didn't have a ride to go anywhere." Money stated that he had heard Church and the unidentified fourth person discussing the robbery while they were driving to Springfield, that he had remained in the back seat of the car when the others got out because he "didn't want nothing to do with it," and that he had not seen the incident because a line of trees had blocked his view. Money indicated in his November 3, 1996 written statement that he "was in the car and did not see any gun," that he "didn't take anything," and that he "had no parts [sic] in the robbery." Allen testified, consistent with his October 31, 1996 written statement, that during the robbery, "Jason Money was in the car, he was over by the car, he had nothing to do with it" and "I think he was actually sitting on the right side with his head turned away because when we got out of the car and they said, come on Jason, he said, this is you all," meaning that "this ain't me." The only suggestion that Money had participated in robbing Allen was Turner's testimony that, after hearing Allen's account of the incident, it had been his impression that "all [four] of them roughed him up a little bit." In Williams, supra, the appellate court concluded that the trial court had properly declined to instruct on accomplice testimony because the record was devoid of evidence that the witness — who had some prior knowledge of the events that occurred and was present during the commission of the crimes — had solicited, procured or conspired with the defendant to commit the offenses or had aided or abetted in the commission of the crimes. Likewise, it was not reasonably inferable from the evidence in this case that Money had encouraged or participated in the offenses against Allen. Church and Brown presented no evidence to show Money's involvement, other than his mere presence, in what they characterized as a voluntary encounter for Allen to purchase drugs. Because the record did not support a finding that Money had been an accomplice in the incident, the trial court correctly refused to instruct on accomplice testimony.
The second assignment of error is overruled.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN PERMITTING THE PROSECUTION TO INTRODUCE INCOMPETENT AND IRRELEVANT EVIDENCE WHOSE PURPOSE SERVED ONLY TO PREJUDICE THE JURY AGAINST THE APPELLANT AND THEREBY DENY HIM A FAIR TRIAL.
Church contends that the trial court should not have permitted the state to inquire into the alleged threats against Money and the circumstances of Brown's arrest.
During Money's direct examination, the state asked who, if anyone, had talked about robbing Allen, and Money replied that he could not remember. The state requested a recess, during which Money informed the trial court that he had received threats regarding his testimony over the telephone three or four weeks prior to trial by "a bunch of [people]," possibly in the presence of Church, and that spectators in the courtroom were intimidating him. When Money's direct examination continued, the state asked what Brown, while incarcerated, had said about the incident during a telephone conversation, and Money replied, "I can't really remember" and "[h]e didn't speak of [the case] that much." The following dialog then took place:
Q. Are you scared to testify here today?
A. Yeah, a little bit, yeah.
Q. Why are you scared?
* * *
 A. I don't know, just the fact that I'm here testifying.
Q. Why are you scared though?
* * *
 A. I don't know. I'm afraid something is going to happen to me later on down the road after this.
* * *
Q. Have you been threatened not to testify?
A. Yes.
* * *
Q. But not by Mr. Brown or Mr. Church?
A. Not directly, no.
Church objected to the questions of why Money felt scared and whether he had been threatened, and the trial court overruled the objections.
Church argues on appeal that the state's inquiry into the threats was wholly irrelevant and was introduced solely to prejudice the jury against him. In our judgment however, the inquiry was probative of Money's credibility because it tended to show why he was "unable" to remember details about the incident. Moreover, because the jury heard Money state that the threats had not come directly from Church or Brown, the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice, Evid.R. 403(A), and the trial court acted well within its discretion in overruling Church's objections. Church also complains that the testimony of sheriff deputies that Brown had fled from arrest was introduced for the sole purpose of raising "an unfair inference of guilt, so that in the final argument, the prosecutor could rhetorically ask the jury, in effect, why would an innocent man run?" Although not relevant to the case against Church, this testimony was probative of Brown guilt. The jury was instructed to "separately consider the evidence applicable to each defendant as though he were separately tried" and to "state your finding as to each defendant uninfluenced by your verdict as to the other defendant," and the jury was capable of considering the circumstances of Brown's arrest in the case against Brown and disregarding this testimony in the case against Church. Thus, we disagree with Church that the testimony was wholly irrelevant and we are not persuaded that the evidence was prejudicial to him.
The third assignment of error is overruled.
 IV. THE STATE FAILED TO TIMELY PROVIDE BRADY MATERIAL TO THE APPELLANT THEREBY DENYING HIM A FAIR TRIAL.
Church contends that the state should have produced prior to trial the notes written by Officer Schantz during the audiotaped interview of Money.
Church asked Officer Schantz whether he had written any notes while taking Money's oral statement, and Officer Schantz responded affirmatively. At a bench conference, the parties argued over whether Officer Schantz's notes should have been provided during discovery. The trial court indicated that "there is a discovery problem here" and ordered the state to turn over the notes the next day. The state complied with the order.
The prosecution's suppression of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963),373 U.S. 83, 87. "[F]avorable evidence is material, and constitutional error results from its suppression by the government, `if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley (1995), 514 U.S. 419, 433-434, citing United States v. Bagley (1985), 473 U.S. 667, 682. "If, however, the evidence that was allegedly withheld is merely cumulative to evidence presented at trial, no violation occurs."State v. Aldridge (1997), 120 Ohio App.3d 122, 145.
During Money's cross examination on the first day of trial, Church questioned him about his November 3, 1996 written statement witnessed by Officer Schantz in which he wrote, "I was in the car and did not see any gun." Also on the first day of trial, Officer Schantz testified that he had started writing notes during the audiotaped interview of Money, and Church cross examined him on the alleged exculpatory nature of his notes:
 Q. Didn't * * * Jason Money tell you at one time he didn't see any gun?
A. Yes, he did.
Q. And then he told you he saw a gun?
A. Yes, he did.
 Q. And that was the very last thing that he told you, that he saw a gun?
 A. I don't remember if it was the very last thing that he said.
Q. It was pretty close to the end, wasn't it?
A. I would have to listen to the tape.
Because Church does not complain that he did not have sufficient access to Money's written statement and the audiotaped interview from which Officer Schantz's notes were taken, Officer Schantz's notes were merely cumulative of evidence presented at trial. Thus, Church did not demonstrate a Brady violation.
The fourth assignment of error is overruled.
 V. THE COMMENTS OF THE PROSECUTOR DURING FINAL ARGUMENT DENIED APPELLANT A FAIR TRIAL.
Church contends that he was deprived of a fair trial when, during closing argument, the prosecutor expressed his personal opinion on witnesses' credibility and the defendants' guilt, commented on the defendants' decisions not to testify, referred to matters not in evidence, and emphasized the "incompetent evidence" of the threats against Money and the circumstances of Brown's arrest
Improper comments during the prosecutor's closing argument require a reversal of conviction if the argument, viewed in its entirety, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 643. "A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty." State v. Benge (1996), 75 Ohio St.3d 136, 141. By failing to object during the prosecutor's closing argument, the defendant waives all but plain error. State v. Hill (1996),75 Ohio St.3d 195, 203.
Church complains of the prosecutor's statements that "I feel, based on the evidence, that we have fully and completely beyond a reasonable doubt [proven the defendants' guilt] * * * why do I feel that is true?" and "[t]here is no doubt in my mind that they did just what they told Jason Money they were going to do that night." Church did not object to these comments, which, having been made in the context of summarizing the evidence supporting the charges, did not constitute plain error. See Hill,75 Ohio St. 3d at 203-204. Although the prosecutor did improperly comment that Allen was a credible witness, Church did not object to the statement, and this isolated comment did not clearly affect the outcome of trial so as to constitute plain error.
Church also complains that the prosecutor improperly commented on his failure to testify by stating, "They didn't show you one witness that said that these two guys didn't commit this offense." Church is correct that a prosecutor is forbidden from commenting on an accused's exercise of his right to remain silent. See Griffin v. California (1965), 380 U.S. 609, 615. "The question is `whether the language used was manifestly intended or was of such character that the jury would naturally andnecessarily take it to be a comment on the failure of the accused to testify.'" State v. Webb (1994), 70 Ohio St.3d 325, 328-329, quoting Knowles v. United States (C.A.10, 1955), 224 F.2d 168,170. The prosecutor "is not prevented from commenting upon the failure of the defense to offer evidence in support of its case."State v. Williams (1986), 23 Ohio St.3d 16, 20. In our judgment, the prosecutor's comment was not one that the jury would naturally and necessarily interpret as a comment on the defendants' failure to testify. Rather, the comment appears to have addressed the defendants' failure to offer more compelling evidence supporting their case. Church next argues that the prosecutor "strongly commented on those items of incompetent evidence" solely to prejudice the jury against him. As we stated in response to Church's third assignment of error, testimony regarding the alleged threats against Money and the circumstances of Brown's arrest was relevant and admissible, and thus, was not a forbidden subject during the prosecutor's closing argument.
Finally, Church claims that the prosecutor should not have discussed the reasons for dismissing the charges against Money because the matter was "not supported by evidence." However, immediately following Church's objection to the prosecutor's statement that, after a full investigation, "there were no charges there" against Money, the prosecutor referred to Money's testimony that he had told Church and the unidentified fourth person that he did not want to participate in robbing Allen and that he had remained inside the car during the robbery. In our judgment, by referring to Money's testimony that he had not participated in the robbery, the prosecutor adequately supported the objected to statement by reference to the evidence.
Viewed in its entirety, the prosecutor's closing argument did not so infect the proceedings as to deprive Church of a fair trial.
The fifth assignment of error is overruled.
 VI. THE TRIAL COURT ERRED IN PROHIBITING THE DEFENSE FROM ACQUIRING [SIC] INTO ALLEGATIONS THAT THE JURY WAS NOT IMPARTIAL.
Church contends that, subsequent to trial, Brown's defense counsel learned from Money that "one or more of the jurors knew or was acquainted with Chad Allen" and that the trial court erred in preventing further investigation into the matter by granting the state's motion to quash a subpoena for the deposition of Money.
The record is devoid of evidence of any action taken by Church regarding the allegations of juror bias. The subpoena that the trial court quashed had been issued by Brown exclusively. Church cannot complain about a ruling that was adverse to his co-defendant on a matter in which he was not involved.
The sixth assignment of error is overruled.
 VII. THE TRIAL COURT ERRED BY IMPOSING A SENTENCE WHICH VIOLATED THE STATUTORY SENTENCING GUIDELINES.
Church contends that, because he was a first-time offender and not likely to re-offend, because his conduct "seemed less serious than conduct normally constituting the offense [of aggravated robbery]," and because Allen "facilitated or induced the offense in his quest for drugs" and was, if at all, slightly injured, the sentence imposed was contrary to the sentencing criteria of R.C. 2929.14.
In its sentencing entry, the trial court stated that it had considered the record, the statements made at the sentencing hearing, any victim impact statements and presentence reports, and the R.C. 2929.11 principles and purposes of sentencing and that it had balanced the seriousness and recidivism factors pursuant to R.C. 2929.12. The trial court applied the R.C. 2929.13(D) presumption in favor of imprisonment for first-degree felony offenders and found that, pursuant to R.C. 2929.14(B), the shortest prison term would demean the seriousness of Church's conduct. Church was ordered to serve consecutive sentences of eight years imprisonment for aggravated robbery and, pursuant to R.C. 2929.14(D)(1), three years for the firearm specification.
A felony sentence must be "reasonably calculated to achieve the two overriding purposes of felony sentencing" — protecting the public from future crime by the offender and others and punishing the offender — and must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11. Pursuant to R.C.2929.13(D) and 2929.14(A)(1), a definite prison term of three, four, five, six, seven, eight, nine, or ten years for a first-degree felony is presumed necessary to meet the overriding purposes of felony sentencing set forth in R.C. 2929.11(A). If an offender "previously has not served a prison term, the court shall impose the shortest term authorized for the offense pursuant to [R.C. 2929.14(A)], unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). R.C.2929.14(D)(1)(a)(I) mandates an additional three-year prison sentence for an R.C. 2941.145 firearm specification.
In our judgment, the trial court correctly applied the statutory presumption in favor of imprisonment for Church's first-degree felony offense and did not abuse its discretion in finding that, although Church was a first-time offender, the shortest prison term authorized by R.C. 2929.14(A) would demean the seriousness of his offense. Based on its finding that Allen had suffered physical harm during the commission of the aggravated robbery and on the circumstances surrounding the offense, the trial court reasonably determined that the sentence imposed would further the purposes of felony sentencing. Because the trial court followed the statutory directives for felony sentencing, we find no abuse of discretion in the sentence imposed.
The seventh assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and FAIN, J., concur.