DECISION
Plaintiff-appellant, Khwaja Aziz, M.D., appeals from the Franklin County Court of Common Pleas, which entered judgment, following a jury verdict, in favor of defendant-appellee, William M. Ditty.
The following evidence was offered at trial. At approximately 8:00 p.m. on October 5, 1999, Aziz was attempting to cross from the north to the south side of McCoy Road in Columbus when he was struck by a car driven by Ditty. Aziz was not crossing in a crosswalk. Ditty was traveling eastbound on McCoy Road. At the time of the accident, it was dark outside but the street lights were illuminated. Aziz was wearing a light colored sweater. The roads were dry. The posted speed limit was thirty-five m.p.h. Before reaching the area where the accident occurred, Ditty passed through an area of road construction where barrels diverted eastbound traffic into the westbound lanes of McCoy Road.
Ditty testified that, as he drove through the construction zone, the barrels obstructed his view of McCoy Road. To compensate, he decreased his speed to between twenty-five and thirty m.p.h. He testified that, once he was rerouted back into the eastbound lanes of McCoy Road, he started to accelerate back up to the speed limit. He described the moments before the accident as follows:
 Q. Would you please explain to the jury what happened as you passed the last barrel on McCoy Road on the night of the accident?
 A. As I passed the last barrel * * * I had to make a right-hand maneuver to get into the southbound lanes. As I turned my car back to the left to be straight in my eastbound lane, there all of a sudden was Doctor Aziz straight in front of me. * * * [Tr. at 388.]
Ditty testified that he did not see Aziz until he was immediately in front of the car and, although Ditty hit his breaks and turned his steering wheel to the left, his reaction time was "instantaneous" and the accident happened in "a split second." (Tr. at 392, 403.) Because "everything happened so quickly," Ditty testified that he could not say with certainty whether he hit his brakes before his car made contact with Aziz. (Tr. at 393.) Ditty stated that his headlights were illuminated and that he did not exceed the thirty-five m.p.h. speed limit.
Michele Corwin testified that she was driving five car lengths behind Ditty at the time of the accident. She stated that her speed was approximately thirty m.p.h. and that Ditty "couldn't have been going much faster" than thirty m.p.h. (Tr. at 266.) She testified that she was "99 percent" sure that Ditty was traveling between thirty and thirty-five m.p.h. at the time of the accident. (Tr. at 275.) According to Corwin, Ditty never exceeded the speed limit and he appeared to be traveling normally and had his car under control.
Corwin acknowledged that she provided a statement to the police four days after the accident. In her statement, she had estimated that she had been traveling approximately thirty-five to forty m.p.h. at the time of the accident. Corwin explained, however, that when she gave her statement to the police she "wasn't positive on the speed" and "was guessing 35 to 40 miles per hour." (Tr. at 274.) After she provided her statement, Corwin and her mother drove down the same area of McCoy Road so that Corwin could check how fast she was driving at the time of the accident. Based on this trip with her mother, Corwin concluded that her speed was thirty to thirty-five m.p.h. at the time of the accident.
Walter Morey testified that he was driving westbound on McCoy Road when he witnessed the accident. Immediately prior to the accident, he observed Aziz as he was crossing the street. According to Morey, Aziz did not stop at the center line in the road or turn to look for oncoming traffic. Morey testified that Aziz appeared to be oblivious to what was going on around him as he attempted to cross McCoy Road.
The parties presented expert witnesses who provided competing accident reconstruction analyses. Testifying on Aziz's behalf, Carmen Daecher opined that, based on the damage from the impact, Ditty was traveling at least thirty m.p.h. at the time of impact. Daecher assumed that Ditty had been traveling at thirty-four m.p.h. and that impact occurred at precisely the same time Ditty hit his brakes. Using these assumptions and data regarding the location of Aziz and of Ditty's car after impact, Daecher opined that Ditty should have been able to see Aziz and to stop in time to avoid the collision.
Aziz's attorney also asked Daecher to assume that Ditty applied his brakes before impact, prompting the following testimony:
 Q. Do you have an opinion based upon your education, training and experience and evaluation of this case regarding the sequence of Mr. Ditty's braking? And what I mean by that is, whether there was an impact, brake and swerve, or swerve, brake and then impact.
 A. I believe even based both upon his testimony and the damage to the vehicle, I believe that impact occurred immediately or right at the coincident time of braking and then, if there was any, swerving occurred.
 Q. Okay. If someone comes into the courtroom and testifies that there was braking before impact, what would that do to Mr. Ditty's pre-brake speed?
 A. Well, I'm not sure if I understand the question. Are we still assuming impact at the speed that I've estimated, 34 miles an hour?
 Q. Yes. If we are assuming the impact speed that you've estimated at 34 miles an hour, if someone were to come into this courtroom and turn the sequence around and say there was braking before impact, what would that do to Mr. Ditty's speed?
A. That would increase his speed.
Q. How so?
 A. Well, not knowing depending on how long he had been braking previous to impact, if impact occurs at 34 miles an hour, then it's going to increase. By how much will be dependent on how long the brakes had been applied previous to that point of impact.
 Q. Is it more likely than not under that circumstance that the pre-braking speed would have been in excess of 35 miles an hour?
A. Yes. [Tr. at 106-107.]
Ditty's expert witness, Lawrence Dubois, criticized Daecher's measurements and methodology and opined that Ditty took appropriate evasive action under the circumstances.
At the close of all the evidence, the trial court granted in part Ditty's motion for a directed verdict by ruling that Aziz was negligent per se. Specifically, the trial court stated as follows:
 The law provides that a pedestrian crossing the roadway at any point other than within a marked crosswalk or an unmarked crosswalk at an intersection must yield the right-of-way to all vehicles in the roadway. I've made a determination that did not happen, so Mr. Aziz was negligent. [Tr. at 474.]
By its partial directed verdict, however, the court merely determined that Aziz breached a duty of care. The court left for the jury the issue of proximate cause of the accident. Consequently, the case went to the jury to determine (1) whether Ditty breached a duty of care and, if so, (2) the comparative negligence of the parties.
The jury returned a verdict in favor of Ditty. By interrogatory, the jury stated that Ditty was not negligent in operating his vehicle.
Aziz now asserts the following assignments of error:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DIRECTING A VERDICT THAT PLAINTIFF WAS NEGLIGENT PER SE.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO CORRECTLY INSTRUCT THE JURY.
For clarity, we address appellant's assignments of error in reverse order. By his second assignment of error, appellant argues that the trial court failed to correctly instruct the jury because it failed to give four instructions proffered by appellant. Specifically, appellants had sought instructions regarding (1) assured clear distance, (2) right-of-way, (3) speed, and (4) a driver's duty to look.
A trial court is required to give jury instructions that are, when taken as a whole, sufficiently clear to allow a jury to apply the law to the facts and inform the jury adequately of the law. See Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210. The instruction to the jury should state clearly and concisely the issues of fact and principles of law governing the case. Pickering v. Cirell (1955), 163 Ohio St. 1,4.
The language of jury instructions, however, is within the trial court's discretion. "A trial court is not required to give a proposed jury instruction in the precise language requested by its proponent, even if the proposed instruction states an applicable rule of law. Instead, the court has the discretion to use its own language to communicate the same legal principles." Henderson v. Spring Run Allotment (1994),99 Ohio App.3d 633, 638. An appellate court considers whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error of law; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Id. Moreover, upon review, we must consider the charge to the jury in its totality, and if the law is clear and fairly expressed, there is no abuse of discretion. See Yeager v. Riverside Methodist Hosp. (1985),24 Ohio App.3d 54, 55.
We conclude that the trial court did not err when it refused to give appellant's proposed instruction regarding speed, as we conclude that the evidence was insufficient to support the instruction. "[R]equested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. When reviewing the record to ascertain whether there was sufficient evidence to support the requested instructions, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Id. To show reversible error, therefore, Aziz must demonstrate that the requested instruction is a correct statement of the law and applies in light of the evidence in the case. See Pallini v. Dankowski (1969), 17 Ohio St.2d 51, 53.
Aziz argues that the evidence is sufficient to support an instruction regarding speed. Specifically, Aziz contends that Michele Corwin and Carmen Daecher provided evidence that Ditty was speeding. We disagree.
Michele Corwin testified at trial that Ditty never exceeded the speed limit and that he appeared to be traveling normally and under control. She stated that she was "99 percent" sure that Ditty was traveling between thirty and thirty-five m.p.h. Although Aziz points to Corwin's prior statement to the police that she and Ditty were traveling between thirty-five and forty m.p.h. at the time of the accident, Corwin explained at trial that she was merely guessing when she provided that estimate and that, once she had an opportunity to drive on McCoy Road again, she made a specific effort to ascertain Ditty's speed with greater accuracy. Under these circumstances, we do not believe that McCoy's prior estimate is sufficient evidence to warrant an instruction on speed.
With regard to speed, Carmen Daecher testified that, in performing his accident reconstruction, he assumed that Ditty was traveling at thirty-four m.p.h. at the time of impact. Aziz argues that Daecher's testimony is sufficient to support an instruction on speed because Daecher also stated that, assuming Ditty had applied his brakes prior to impact, his pre-braking speed would have likely exceeded thirty-five m.p.h. We disagree that Daecher's answer to this hypothetical question creates evidence sufficient to support an instruction on speed. Ditty testified that the accident occurred "a split second" after he saw Aziz. Daecher apparently concurred, as he testified that "based both upon [Ditty's] testimony and the damage to the vehicle, I believe that impact occurred immediately or right at the coincident time of braking." (Tr. at 106.) Furthermore, Daecher's opinion that Ditty should have been able to see Aziz and stop in time to avoid the accident was predicated upon his assumption that Ditty was traveling at thirty-four m.p.h. prior to the accident, not at a speed in excess of thirty-five m.p.h. Specifically, Daecher calculated the distance in which Ditty should have been able to stop based upon an assumption that Ditty was traveling at thirty-four m.p.h. Given the interrelationship between the calculations at issue, we will not allow Aziz to alter discrete portions of Daecher's accident reconstruction analysis in an effort to justify an instruction on speed.
We likewise conclude that the trial court did not err when it declined to give Aziz's proposed instructions on assured clear distance, right-of-way and a driver's duty to look. The trial court instructed, in part, as follows:
 With respect to Mr. Ditty, a driver must use ordinary care in the operation of his motor vehicle. Now even though Mr. Ditty has no legal duty to look for pedestrians crossing into his lane, the use of ordinary care does include the duty to see a pedestrian that is in his lane who would have been seen by a reasonably cautious, careful or prudent person under the same or similar circumstances. A driver is negligent if he fails to see a reasonably discernible pedestrian in his path of travel.
 A discernable pedestrian is a reasonably visible pedestrian. A pedestrian is discernible when he is visible or can be detected or perceived. If a pedestrian is reasonably visible to the driver and the driver should have been able to avoid impact with the pedestrian but does not, the driver can be negligent. However, if a pedestrian is not reasonably visible to the driver or after becoming reasonably visible to the driver, the driver cannot avoid impact with the pedestrian, then the driver may not be negligent. [Tr. at 474-475.]
We conclude that the trial's instruction regarding Ditty's duty of care, taken as a whole, was sufficiently clear to allow the jury to apply the law to the facts of this case. Accordingly, we overrule appellant's second assignment of error.
By his first assignment of error, appellant contends that the trial court erred by granting a partial directed verdict in Ditty's favor, finding that Aziz was negligent per se in crossing the street. At oral argument, counsel for Aziz conceded that Aziz "would have a problem" prevailing on his first assignment of error if this court concluded that the trial court did not err in giving its jury instructions. We agree with this characterization. We decline to address the merits of appellant's argument, as we conclude that this assignment of error was rendered moot by the jury's determination that Ditty was not negligent.
Even assuming that the trial court erred by granting Ditty's motion for a directed verdict on the issue of Aziz's negligence, this error would be harmless. Civ.R. 61 provides, in pertinent part, as follows:
 No error * * * or defect in any ruling or order or in anything done or omitted by the court * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. * * *
By interrogatory, the jury indicated that it determined that Ditty was not negligent. The trial court's determination of Aziz's negligence, therefore, was of no consequence in the outcome, as the jury never had reason to compare the parties' negligence. Accordingly, we overrule appellant's first assignment of error.
For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and KLATT, JJ., concur.