DECISION AND JUDGMENT
{¶ 1} Defendant-appellant, Johnson Controls Battery Group, Inc. ("Johnson Controls"), appeals the decision of the Lucas County Court of Common Pleas allowing *Page 2 
plaintiff-appellee, Tyrone Davis, to participate in the workers' compensation fund for bilateral carpal tunnel syndrome.
 {¶ 2} Davis started working for Johnson Controls in 1990. Appellee's job for the last 14 years is as COS unloader. That is, Davis helps construct batteries on the assembly line and previously worked 12 hour shifts. His specific job duty is to place six negative and six positive plates, which are strapped together in sets of two, each weighing five and one-half pounds, into a battery. Davis grabs an empty battery case, puts it in front of him, loads the plates into the battery, and slides the battery down to the a conveyor belt. After appellee loads the plates into the battery case, it weighs approximately 30 pounds. A battery is built every 21 seconds.
 {¶ 3} Appellee began experiencing pain in his wrists in January 2004. Subsequently, he also had tingling and numbness in his thumb and fingers. Davis was treated by his primary care physician, but that treatment did not abate the pain, tingling, and numbness. In April 2004, appellee was referred to Robert H. Hartwig, M.D., an orthopedic surgeon, who provided the diagnosis of bilateral carpal tunnel syndrome. Steroid shots in appellee's wrists "helped" for a short period, but the pain returned. In December 2004, Dr. Hartwig performed surgery on one wrist and operated on the other wrist in January 2005.
 {¶ 4} Davis could not return to work until April 12, 2005, with the restriction that he could only work an eight hour shift. He also wears splints on his hands and takes an anti-inflammatory medication. Davis does, however, continue to have intermittent pain *Page 3 
and tingling in his wrists/ hands and is re-evaluated by Dr. Hartwig every six months. In his medical notes made as a result of these evaluations, Dr. Hartwig refers to the need for appellee to change his job position to one less repetitive in order to improve the condition of his wrists/hands.
 {¶ 5} Davis filed an application with the Ohio Bureau of Workers' Compensation as the result of the physical problems with his wrists/hands. The District Hearing Officer allowed his claim, finding: "[T]he injured worker sustained an injury in the course of and arising out of his employment described as follows: repetitive use of hands building batteries." The hearing officer concluded that appellee's claim be allowed for bilateral carpal tunnel syndrome.
 {¶ 6} Johnson Controls appealed this decision to the Industrial Commission. A Staff Hearing Officer affirmed the District Hearing Officer's decision on July 25, 2005. Appellant then appealed that decision to the Industrial Commission, but the commission refused to hear its appeal. Thereafter, Johnson Controls filed an appeal to the Lucas County Common Pleas pursuant to R.C. 4123.512.
 {¶ 7} On January 28, 2008, the parties took a videotaped trial deposition of Davis's medical expert, Robert H. Hartwig, M.D, an orthopedic surgeon. Prior to trial, Johnson Controls filed a motion in limine to preclude Hartwig's testimony at trial because he failed to opine that the work Davis performed for appellant was the proximate cause of appellee's bilateral carpal tunnel syndrome. Instead, Dr. Hartwig testified that appellee's job was a merely a "contributing factor" or "significant contributing cause." Therefore, *Page 4 
Johnson Controls asserted that the physician's testimony was conjectural and should be excluded from the jury's consideration. Appellee filed a memorandum in opposition in which he argued that this testimony was sufficient because Dr. Hartwig's opinion was given to a "reasonable degree of medical certainty." At that point in time, the trial court did not rule on appellant's motion.
 {¶ 8} The court did, however, address this issue out of the jury's hearing at the commencement of the trial in this case and determined that the use of the term significant cause with no other identifiable contributing factor equaled a more than fifty percent chance that the proximate cause of appellee's bilateral carpal tunnel rose out of and in the course of his employment. Based on the foregoing, the lower court declined to preclude Dr. Hartwig's testimony concerning causation.
 {¶ 9} The deposition was then shown to the jury. On direct examination, appellee's counsel engaged in the following colloquy with Dr. Hartwig:
 {¶ 10} "Q. Based on your examination of Tyrone, your medical expertise and your understanding of his job activities, do you have an opinion to a reasonable degree of medical probability as to the cause of Tyrone's carpal tunnel syndrome?
 {¶ 11} "A. I think that his occupation was a contributing factor.
 {¶ 12} "Q. Okay. Do you believe that it was a direct and — that the carpal tunnel syndrome was a direct and proximate cause of his job duties?
 {¶ 13} "A. I think his job duties were a significant contributing factor." *Page 5 
 {¶ 14} On cross-examination, appellant's counsel also questioned Dr. Hartwig relative to the proximate cause:
 {¶ 15} "Q. Okay. Now you've testified, and I heard Ms. Wilson ask you specifically, whether or not you believed that the activities at work are a proximate cause of Mr. Davis' carpal tunnel syndrome, and your testimony was that it was a contributing factor. So my question to you is, are you testifying that the work is a proximate cause of the carpal tunnel syndrome, is that your testimony?
 {¶ 16} "A. Well, it — I guess, you know, in phrasing it, I think it is a contributing factor. I guess, is it the sole cause? Probably not. But is it a contributing factor, yes, I believe that.
 {¶ 17} "Q. Okay. What do you — I'm still confused, what do you mean by a contributing factor?
 {¶ 18} "A. That it is a contributing cause to the development of the carpal tunnel syndrome.
 {¶ 19} "Q. Okay. What other things would be contributing factors to his carpal tunnel syndrome?
 {¶ 20} "A. Well, the majority of these you can't really tell. I can't determine any other factor, that is — that's why I would say it is a significant contributing factor. Roughly 80 percent of carpal tunnel syndromes defy a specific cause or etiology, so that it's turned idiopathic. And that's, again, a broad umbrella term. So, therefore, in his case *Page 6 
it is a contributing factor. Is it a sole factor? Probably not. But I can't determine what other contributing factor there is."
 {¶ 21} On redirect, appellee's counsel asked and Dr. Hartwig answered the following questions:
 {¶ 22} "Q. Okay. You also testified that there are some individuals who have carpal tunnel syndrome, where you cannot identify a specific cause for it or any cause for it; is that correct?
 {¶ 23} "A. Well, I think this is — no, I think his work was a contributing factor.
 {¶ 24} "[Appellant objects]
 {¶ 25} "A. We eliminated certain general systemic conditions, diabetes, rheumatoid arthritis and those conditions. Then you have to go back and say, well, what could contribute? Well, I think work can contribute to it. I mean, this is — there are jobs that have a high risk, whether his is one or not I mean, reviewing it, repetitive use of your hands is a contributing factor."
 {¶ 26} Johnson Controls moved for a directed verdict at two points during the trial — after appellee rested his case and after it presented its defense. Both motions were premised upon the allegation that Dr. Hartwig's medical opinion as to the proximate cause of appellee's bilateral carpal tunnel syndrome was not rendered to the proper legal standard. The trial court overruled both of these motions.
 {¶ 27} Proposed jury instructions were discussed in the trial court's chambers the evening before closing arguments. The next day the court gave the jury its instructions, *Page 7 
but noted that, by agreement, appellant's objections would be discussed on the record while the jury was deliberating. At that time, Johnson Controls noted that it raised two objections. The court explained its rationale for overruling the objections on the record.
 {¶ 28} The jury returned a verdict in which it found that Davis "is entitled to participate in the Worker's [sic] Compensation Law for the condition of bilateral carpal tunnel syndrome." Johnson Controls appeals that judgment and maintains that the following errors were committed by the court below:
 {¶ 29} "I. The trial court erred in denying Johnson Controls motion for a directed verdict.
 {¶ 30} "II. The trial court erred by giving the jury instruction on dual causation."
 {¶ 31} In Assignment of Error No. I, appellant contends that the trial court erred in failing to grant its motions for a directed verdict.
 {¶ 32} A motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ. R. 50(A)(4). In deciding motion for a directed verdict, a court must assume that the evidence presented by the nonmovant is true and must give the nonmovant the benefit of all reasonable inferences to be drawn from that evidence and ascertain whether any substantial probative evidence supports the nonmovant's claim. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. *Page 8 
 {¶ 33} In order to be entitled to workers' compensation benefits, an employee must prove, by a preponderance of the evidence that his injury arose during the course of his employment and that as a direct and proximate result of that injury, he was harmed or disabled. Cook v.Mayfield (1989), 45 Ohio St.3d 200, 204. (Citations omitted.) Where medical evidence is necessary, that evidence must show that the accidental injury was or probably was a direct or proximate cause of the harm or disability. Id. "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue."Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus. In other words, "`[p]roof by a reasonable degree of medical probability means that the condition more likely than not caused the condition.'" Gomez v. Sauder Woodworking Co., 176 Ohio App.3d 453,2008-Ohio-2377, ¶ 18, quoting Douglas v. Ohio Bur. of Workers'Comp. (1995), 105 Ohio App.3d 454, 461.
 {¶ 34} As set forth above, the testimony of Dr. Hartwig, as expressed as an opinion to a reasonable degree of medical probability, demonstrates that more likely than not the proximate cause of Tyrone's bilateral carpal tunnel was the repetitive work he performs as appellant's employee. Johnson Controls, however, urges that because Dr. Hartwig testified that appellee's work was a "contributing factor," but failed to identify any alternative cause of Tyrone's condition, the doctor was required to opine that appellee's job was the proximate cause of his bilateral carpal tunnel. Appellant relies on Steinmetz v.Latva, 6th Dist. No. E-02-025, 2003-Ohio-3455, to support this proposition. *Page 9 
 {¶ 35} In Steinmetz, Gerken Paving Company ("Gerken") was performing construction for the Ohio Department of Transportation on State Route 2. Id., ¶ 2. The plaintiffs, Kristen and Paul Steinmetz and their two small children, who were in the rear seat of their automobile, were stopped behind backed-up traffic approximately one mile from the construction site. Id. George Latva approached the end of the backed-up traffic line, did not stop his motor vehicle and crashed into the rear of the Steinmetz automobile, killing the two children and injuring their parents. Id. The parents and their insurance company sued Gerken, Latva, and the civil engineering firm that drew up the maintenance plan. Id., ¶ 3. Prior to trial, the claim against Latva was settled. Id. at fn. 1. The Steinmetz's insurance company also settled their insured's claim before trial. Id. Following trial, a jury entered an award of $2.5 million against Gerken. Id.
 {¶ 36} Gerken appealed the judgment, asserting, among other things, that the trial court erred in failing to grant its motion for a directed verdict because there was no evidence of proximate cause offered at trial. Id., ¶ 6. Appellee, the insurance company, presented the testimony of an expert witness at trial to demonstrate how the signage used by Gerken, the monitoring of that signage, and the deficient general monitoring of the construction site was the proximate cause of the accident. Id., ¶ 22. This court determined that the expert's testimony was "not competent as to proximate cause." Id., ¶ 28. In doing so we found:
 {¶ 37} "While he [the expert] testified that deficient engineering in a construction zone causes a `high probability' that a driver's response will be affected, he did not testify *Page 10 
specifically that the engineering work in this case affected Latva's response. Further, his general testimony that the engineering work was `a causal factor' in the accident was not given with any probability. He testified that the engineering work was a causal factor but not the only causal factor. Such testimony would not permit a trier of fact to find that there was more than a 50 percent likelihood that the engineering work caused the accident. Furthermore, his testimony attempting to link the signage to the accident was pure conjecture: Since Latva drove up to the point of impact without incident, he must have been confused by the signs and his confusion must have caused him to collide into the Steinmetz vehicle. Such conjecture is inadmissible to establish proximate cause." Id.
 {¶ 38} We are of the opinion that Steinmetz does not stand for the proposition that Dr. Hartwig was, after eliminating some other possibilities, required to testify to a reasonable degree of medical probability that appellee's job was the, meaning sole, proximate cause of his bilateral carpal tunnel. To the contrary, our holding inSteinmetz is based upon the insurer's failure to offer any evidence "that would cause reasonable minds to differ on the issue of proximate cause." Id., ¶ 50. Here, Dr. Hartwig's testimony was sufficient to create an issue of fact on the question of proximate cause; therefore, the trial court did not err in denying appellant's motions for a directed verdict. Appellant's Assignment of Error No. I is found not well-taken.
 {¶ 39} In his Assignment of Error No. II, appellant complains that the trial court committed reversible error when it gave a jury instruction on dual causation because no *Page 11 
evidence was offered to indicate that any other condition was potentially a cause of appellee's bilateral carpal tunnel.
 {¶ 40} "A charge to the jury should be a plain, distinct, and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. That is, a trial court cannot instruct the jury on a particular issue when no evidence was offered to support that issue. Murphy v.Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591, citing Riley v.Cincinnati (1976), 46 Ohio St.2d 287. The decision as to whether the evidence supports the giving of a particular instruction is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion indicates that a trial court committed "more than a simple error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 214, 219.
 {¶ 41} In this case, the lower court gave the following instruction on proximate cause:
 {¶ 42} "Proximate cause. A party who seeks to participate in the Workers [sic] Compensation Law for a specific medical condition must show a direct and proximate causal relationship between his injury and that medical condition. An injury may have more than one proximate cause."
 {¶ 43} Appellant objected to this instruction of the basis that the evidence offered at trial established that only one cause was shown to be the proximate cause of Davis's *Page 12 
bilateral carpal tunnel syndrome. We disagree. A dual causation instruction is warranted where there is evidence of two or more proximate causes of an injury. Murphy v. Carrollton Mfg. Co.,61 Ohio St.3d at 588, citing Norris v. Babcock Wilcox Co. (1988),48 Ohio App.3d 66, 67. Here, Dr. Hartwig refused to give a medical opinion that pointed to appellee's employment as the sole proximate cause of his injury. While he did not specifically state any other particular conditions that would be proximate causes of the carpal tunnel, Dr. Hartwig would only characterize appellee's job duties as "a contributing factor" or "a significant contributing factor" to that condition.
 {¶ 44} In addition, the written reports of appellant's medical experts were entered into evidence. Thomas E. Lieser, Sr., M.D., who is a board certified to practice occupational medicine, examined Davis in 2004 for the purpose of determining whether his bilateral carpal tunnel syndrome was caused by his occupation. Dr. Lieser concluded that appellee's condition "was not directly and proximately caused" by his job duties because "the job of unloader does not pose as a risk factor for the development of carpal tunnel syndrome." The doctor listed a number of other personal factors that could have caused this injury. These include obesity, appellee's age of 52, a "right box wrist," and the "double crush phenomenon due to cervical degenerative disease and degenerative arthritis." Dr. Leister also pointed out that upon examination of appellee's wrists, he suspected an "underlying inflammatory degenerative process." Moreover, appellant's other medical expert, Lawrence A. Kale, M.D., also opined that that Davis's bilateral carpal tunnel syndrome was not directly and proximately caused by his work activities. *Page 13 
Dr. Kale also listed some of the same factors, including obesity and an age over 50, set forth by Dr. Lieser.
 {¶ 45} Upon review of the foregoing, we find that there was sufficient evidence offered below to warrant a dual causation jury instruction. Therefore, the trial court did not abuse its discretion in giving that instruction. Appellant's Assignment of Error No. II is found not well-taken.
 {¶ 46} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs assessed to appellant pursuant to App. R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., Arlene Singer, J., CONCUR. *Page 1