DECISION AND JOURNAL ENTRY
Appellant Willie Alston appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
On November 29, 1995, Alston was indicted on one count of assault, in violation of R.C. 2903.13(A),[1] with two specifications. The indictment alleged that Alston "knowingly cause[d] or attempt[ed] to cause physical harm to Lt. Gregory Robinson, an employee of the department of rehabilitation and correction." The indictment further charged that Alston, during the assault, "caused physical harm to another or made an actual threat of physical harm to any person by means of a deadly weapon, or * * * [had] previously been convicted or pleaded guilty to an offense of violence" and that Alston had a prior conviction of a violent offense. The prior conviction specification was tried to the bench and the assault charge and physical harm specification were tried to a jury.[2]
The state's case was presented largely through the testimony of Lt. Gregory Robinson, a security officer assigned to the dining hall at the Lorain Correctional Institution. Robinson testified that on June 21, 1995 Hardy, an inmate, approached him in the dining hall and indicated that a problem existed between himself and Alston, another inmate and defendant herein. Hardy requested an opportunity to sit down with Alston and straighten it out before "they got into trouble." Robinson agreed to facilitate the request as soon as meal service had begun.
Shortly thereafter, Robinson brought both inmates into the food service manager's office, which was a small room off the food service area, approximately 7' by 10-12'. The room contained several pieces of office furniture and equipment and had large windows to an outer kitchen area. Robinson had a key to the room and, as a security measure, the door locked automatically as they entered. Robinson seated the inmates and asked, "What seems to be the problem between you two gentlemen." According to Robinson, at that point both men started shouting and Alston started to get up. Robinson instructed them to speak one at a time and seated Alston again. Robinson asked Alston what the problem was and Alston got up again, saying to Hardy, "I'm tired of your fucking shit." Robinson ordered him to sit down and said, "Let's try it again." Alston again stood up and approached Hardy, repeating more obscenities. Robinson stood up and told them both the meeting was over.
Robinson took hold of Alston's left hand and attempted to handcuff him. Alston swung at Robinson and knocked the cuffs out of Robinson's hand. Robinson tried to spin Alston around, and Alston started punching and hitting Robinson's chest. During this time Hardy had not moved from his chair. Hardy started to stand and Alston tried to get over the top of Robinson to get at Hardy. Unable to reach his radio to get help, Robinson used his canister of tear gas and sprayed both of the inmates with tear gas. At that point Alston got leverage with his feet and drove Robinson into a bookcase. Robinson hit his head against the bookcase and a window frame. Meanwhile, officers were at the door watching through the window, but were unable to get in because the door was locked. While still holding Alston, Robinson dove for the door to let the officers into the room. The door popped open. Alston drove Robinson out the door, head first and into either a doorframe or the locking bore of a filing cabinet. Robinson testified that when he saw the other officers, he let go of Alston and slid under a desk for cover. He described his own condition as semi-conscious. Robinson testified that during the course of the altercation, he told Alston two or three times to "give it up," but Alston refused.
Robinson was treated briefly at the institution's infirmary and was then transported to Elyria Memorial Hospital where he received treatment for a head wound. His personal physician, Dr. Richard McBurney, treated him the next day. Dr. McBurney testified as to Robinson's injuries, describing them as large bruises, contusions and abrasions on the chest, right buttocks, right thigh, knee, back, and head and a fracture of the sternum. Robinson testified that he was off work for almost four weeks as a result of his injuries.
Two additional correction officers saw parts of the altercation from windows into the room and testified as to what they witnessed. Jack Young testified that he heard yelling coming from the room and saw Alston take a swing at Robinson as the officer tried to handcuff him. Young also saw Alston hold Robinson in a headlock and drive him across the room. Young described the events as a "brawl" and said, "[t]hings went flying." He testified that Robinson lunged for the door and somehow got it open. He described Robinson as "unresponsive" when he finally got out of the office. Lt. Rick Pollard arrived at the scene after Young did and saw Robinson and Alston holding onto each other with Robinson trying to get to the door. He did not see Alston punch or swing at Robinson.
The defense presented the testimony of Anthony Miller, another inmate at the institution. Miller indicated that he had observed Hardy and Alston yelling at each other while still in the dining hall and later observed them go into the office with Robinson. He stated that he had been able to watch from a window into the room and that he had observed Hardy yelling. Miller stated that he saw both inmates "square off" and get into a "scuffle," meaning that they "locked up with each other" and grabbed each other. Miller saw the two inmates fall down with Alston on top of Hardy. He saw Alston hitting Hardy. Miller stated that he did not see Alston do anything to Robinson that was physical. He also testified that "when Alston had Hardy down, Lieutenant Robinson jumped on [Alston's] back and tried to put him in a choke hold and he stood up and that's when he hit the floor." Robinson started spraying his Mace and, at that point, Miller fell down on the floor, laughing. The inmate testified that the food service people eventually opened the door. It was established on cross-examination that Miller had six felony convictions and that he had been transferred for disciplinary problems.
The state presented one witness on rebuttal, an employee in food service, who testified that she had heard loud voices coming from the office and that she had sent a fellow employee to get officers to help Robinson. She stated that she had heard the voices of Robinson and Alston, but not that of Hardy. In reply to a question from the court, she stated that neither she nor the other food service worker opened the office door.
Alston was found guilty on the assault charge and the specifications, as charged in the indictment, and was sentenced accordingly. Alston timely appeals, asserting three assignments of error.
 Assignment of Error No. I THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY FAILING TO GIVE JURY INSTRUCTIONS ON THE DEFENSE OF ACCIDENT.
 In his first assignment of error, Alston asserts that the trial court erred in refusing to give the jury an instruction on the defense of accident. Alston argues that the defense of accident would negate the "knowing" element of the offense of assault. He contends that, because the harm to Lt. Robinson was inadvertent and accidental, it was not "knowingly" done. The assignment of error is not well taken.
The standard for appellate review regarding the denial of a jury instruction is whether the trial court abused its discretion under the facts and circumstances of the case. State v. Wolons
(1989), 44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id., quoting State v. Adams (1980), 62 Ohio St.2d 151,157. This Court finds that the trial court did not abuse its discretion in denying an instruction on the defense of accident.
The Tenth District Court of Appeals has stated that "[i]n order for an accident to occur, it must have been a physical event which would not be reasonably anticipated as a result of a lawfulact." (Emphasis added.) State v. Denton (Sept. 30, 1993), Franklin App. No. 93AP-603, unreported. In Denton, the court found that an instruction on accident was inappropriate where the defendant had engaged in an unlawful act. Id. "By raising the defense of accident, `the defendant denies any intent * * *. Hedenies that he committed an unlawful act and says that the result is accidental.'" (Emphasis added.) State v. Poole (1973), 33 Ohio St.2d 18,20, quoting 4 Ohio Jury Instructions (1970) 177, Section 411.01. The defense of accident, then, is essentially a denial that an unlawful act was committed.
This Court does not find that the record in the case at bar supports a claim of accident. The defense testimony demonstrates that Alston had engaged in a physical confrontation with another inmate in a correctional institution. No privilege attached to Alston's striking of the other inmate. It was clearly not a lawful act. Moreover, the fact that the corrections officer would attempt to stop the fight was foreseeable. Also, the fact that the officer was injured during a violent fight in a small room filled with furniture and equipment was foreseeable. Finally, the fact that Alston argues he may not have intended to injure the corrections officer does not negate his original intention to engage in an illegal act.
Furthermore, accident is an argument that supports the conclusion that the state has failed to prove that the defendant acted "knowingly" beyond a reasonable doubt. State v. Staats
(Apr. 13, 1994), Summit App. No. 15706, unreported. R.C. 2902.22(B) provides that:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 "A defendant acts knowingly when, although he may be indifferent to the result, he is nevertheless aware that the result may occur." State v. Edwards (1992), 83 Ohio App.3d 357, 361. In Staats, the defendant was charged with assault and requested an instruction on accident. It was denied. This Court reasoned that the defendant's argument was an attack upon the state's proof that he had acted knowingly. The Court concluded:
 If [defendant's] argument regarding "accident" had caused the jury to have a reasonable doubt regarding whether he had [acted] knowingly * * *, it would have been required to find [defendant] not guilty of that charge pursuant to the trial court's instructions. Its guilty verdict was necessarily a rejection of [defendant's] "accident" argument.
Staats, supra.
 The Tenth District also found that, where the defendant was convicted of assault, the jury must necessarily have found that the accused acted "knowingly." State v. Gore (Feb. 18, 1997), Franklin App. No. 93AP-606, unreported. "It would be an inconsistent verdict to find defendant guilty of assault, which requires a finding of criminal culpability, where the jury determined that the physical harm resulted from an accident." Id.
Accordingly, the lower court did not err in refusing to instruct the jury on accident. Appellant's first assignment of error is overruled.
 Assignment of Error No. II THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT PERSISTING.
 Alston argues in his second assignment of error that disorderly conduct with the additional element of persisting after a reasonable warning or request to desist ("disorderly conduct persisting") is a lesser included offense of assault and that the trial court erred in not giving this instruction. The error was raised by a motion at the close of the state's case as well as at the close of all evidence. In addition, the body of Alston's argument also refers to a point in the trial below where defense counsel appeared to argue that disorderly conduct as a minor misdemeanor without the additional element of persisting was a lesser included offense of assault and that the facts required a charge on that offense.[3] The trial court refused to give an instruction on any lesser included offense, stating:
 [N]ot only must one find that it's possibly a lesser included offense, depending upon which subsection you're making reference to, but also that it fits the facts of this case. * * * I do not find that the facts of this case warrant giving any instruction other than that which the Court gave.
Alston's argument is without merit.
 In State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus, the Supreme Court of Ohio set forth a three-part test to determine when an offense may be a lesser included offense of another crime.
 An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
 R.C. 2903.13 defines assault and states in pertinent part:
 (A) No person shall knowingly cause or attempt to cause physical harm to another.
* * *
(C) Whoever violates this section is guilty of assault.
* * *
 (2) If the offense is committed in any of the following circumstances, assault is a felony of the fourth degree,
 (b) The offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility * * * and the offense is committed by a person who is under custody in the facility subsequent to his arrest for any crime or delinquent act, * * *.
In this case assault, as charged, is a felony of the fourth degree.
 R.C. 2917.11 defines disorderly conduct and provides in pertinent part:
 (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 (1) Engaging in fighting, in threatening harm to persons or property, or in violent turbulent behavior * * *.[4]
 (E) Whoever violates this section is guilty of disorderly conduct, a minor misdemeanor, except that if the offender persists in disorderly conduct after reasonable warning or request to desist * * * disorderly conduct is a misdemeanor of the fourth degree. * * *.
 Therefore, disorderly conduct is a minor misdemeanor and disorderly conduct-persisting is a misdemeanor of the fourth degree. R.C. 2917.11(E)
Applying the Deem test to a comparison of assault and disorderly conduct-persisting[5] this Court finds that the element of persistence or failure to desist after warning is not present in the crime of assault. Consequently, the second prong of the test cannot be met. See, e.g., State v. Blosser (June 21, 1996), Perry App. No. 95CRB439, unreported. Accordingly, the trial court did not err in refusing to instruct the jury on that offense.
Turning next to a consideration of whether disorderly conduct as a minor misdemeanor is a lesser included offense of assault, this Court must apply the test set forth in Deem, supra, to the elements of those two offenses. Since it is possible to knowingly cause or attempt to cause physical harm to another without causing inconvenience, annoyance or alarm to another, the three-prong Deem
test is not met. State v. Neal (Sept. 1, 1998), Franklin App. No. 97APA12-1676, unreported; State v. Clements (Feb. 15, 1989), Summit App. No. 2407, unreported (Baird, J., concurring) Accordingly, this Court finds that disorderly conduct as a minor misdemeanor is not a lesser included offense of assault and the trial court did not err in refusing to instruct the jury on that offense.
Having concluded that the trial court did not err in refusing to give an instruction on either disorderly conduct-persisting or disorderly conduct as a minor misdemeanor, this Court finds that the second assignment of error is without merit.
 Assignment of Error No. III APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE SUPPORTING THE CONVICTION WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN APPELLANT'S CONVICTION BEYOND A REASONABLE DOUBT.
 In his third assignment of error Alston contends that his conviction for assault is against the manifest weight of the evidence and that the evidence is insufficient as a matter of law to sustain the conviction. This Court finds the assignment of error to be without merit.
 State v. Otten (1986), 33 Ohio App.3d 339, 340 has stated the test to be applied by a reviewing court in applying the standard of weight of the evidence as follows:
 When a defendant asserts that a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported.
The state presented the testimony of three corrections officers. The first was Robinson who testified that Alston struck him and pushed him into furniture causing Robinson serious physical injuries. Robinson testified that he told Alston to give up, but Alston refused. The second corrections officer corroborated testimony that Alston swung at and punched Robinson. The third officer did not see any punches thrown by Alston, but did see Alston and Robinson clutching one another. The state also presented medical evidence as to Robinson's injuries and treatment.
The defense presented the testimony of inmate Miller who testified that the Alston and Hardy had been yelling at each other, that he saw them "square off," argue and fight. While Miller testified that he did not see Alston swing at Robinson, Miller did state that when Alston had Hardy down, Robinson jumped on Alston's back. The defense witness testified that Alston then stood up, causing Robinson to hit the floor. The state's cross-examination of inmate Miller severely impeached the credibility of the witness. The inmate's reaction to Robinson's use of mace was to fall on the floor laughing. The inmate also admitted to six felony convictions and that he had been transferred for disciplinary problems.
Having reviewed the record, this Court finds that this appeal does not present extraordinary circumstances requiring the reversal of the jury verdict as being against the weight of the evidence. The trier of fact was able to assess the credibility of the witnesses and could choose to credit the testimony presented by the state and discount that of the impeached witness for the defense. The evidence does not weigh heavily in favor of Alston and this Court cannot say that the jury clearly lost its way in resolving conflicts in the testimony.
Having found that the verdict of the jury is not against the weight of the evidence, a fortiori, it is sufficient as a matter of law to support the verdict. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96 CA006462, unreported. Accordingly, this Court overrules Alston's third assignment of error.
The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BAIRD, P.J., BATCHELDER, J., CONCUR.
[1] Since the charged offense took place on June 25, 1995, all references to statutes are to those in effect at that time.
[2] Two previous appeals have been taken on final appealable orders in this case. The first was by the state upon the granting of a motion allowing Alston to videotape depositions of all inmate witnesses. This judgment was reversed and remanded by this Court. The second appeal was taken by the state upon the granting of a motion to dismiss for lack of a speedy trial. This Court remanded for further proceedings to determine if prejudice could be demonstrated. The trial court found that there was no prejudice to Alston and the case proceeded to trial.
[3] In his brief, appellant relies on State v. Wilkins (1980),64 Ohio St.2d 382 in apparent support of the proposition that disorderly conduct is a lesser included offense of assault. His reliance, however, is misplaced. Wilkins presents the question of whether sexual battery is a lesser included offense of rape.
[4] Appellant apparently intended to refer to this section of the statute since counsel argued it below and did not raise any other section in his brief to this Court.
[5] Proof of knowledge, as required for the greater offense, encompasses proof of recklessness, as required for either of the lower offenses. See R.C. 2901.22(E).