OPINION
{¶ 1} Defendant-appellant Thomas W. Sampson appeals his June 11, 2001, conviction and sentence from the Stark County Court of Common Pleas on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A). Defendant-appellant is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 6, 2000, defendant-appellant Thomas W. Sampson [hereinafter appellant] was secretly indicted on two counts of drug trafficking, in violation of R.C. 2925.03(A). A jury trial commenced on May 30, 2001. The following evidence was adduced at trial.
 {¶ 3} On October 26, 2000, a confidential informant, herein referred top as "Chris", was working for the Alliance Police Department.[1] Equipped with a wire to enable surveying officers to monitor and tape record Chris' conversations, Chris contacted appellant and discussed with appellant the prospect of buying cocaine. Appellant eventually agreed to sell Chris an ounce of cocaine for $1,000.00. Chris paid appellant for the cocaine and appellant left to obtain the cocaine. Several hours later, appellant met with Chris and delivered the cocaine to the informant. Appellant also gave Chris instructions on what to do with the cocaine.
 {¶ 4} On November 1, 2000, Chris was again wired by the Alliance Police Department and given $950.00 to affect a purchase of cocaine from appellant. Chris contacted appellant and the two discussed the terms of the sale. Appellant eventually agreed to a $950.00 price for the cocaine, asked for the money up front, and promised to return with the cocaine. During the course of the day, Chris attempted to contact appellant about the delivery and to meet with appellant. Appellant eventually met with Chris, but did not have the cocaine to deliver. The two agreed to meet the next day, at which time appellant had some but not all of the cocaine. Eventually, appellant agreed to give what cocaine he had to Chris and to owe Chris $200.00 in the future. Chris agreed and the deal was completed. In total, this second sale took over 24 hours.
 {¶ 5} Upon deliberation, the jury returned verdicts of guilty as charged in the indictment. On June 11, 2001, the trial court found appellant guilty and sentenced appellant to four years of incarceration on one count and a consecutive three year term of incarceration on the other count.
 {¶ 6} Appellant appealed from his conviction and sentence. On appeal, appellant's counsel raised one assignment of error concerning sentencing. On April 8, 2002, this Court affirmed the trial court's judgment.[2]
 {¶ 7} On June 20, 2002, appellant filed an application to reopen the appeal, pursuant to App.R. 26(B). On October 15, 2002, this court granted appellant's motion. Upon the reopening of the appeal, appellant raises the following assignments of error:
 {¶ 8} "I. Since The Tape Recording Of The Undercover Surveillance Contained Conversations Of Prospective Drug Transactions Involving The Informant And Others Who Were Not The Defendant-appellant, The Admission Of These Tape Recordings Into Evidence Over The Defendant-appellant's Objections Denied Him A Fair Trial, Due Process Of Law And Violated Rules 401, 402, And 403 Of The Ohio Rules Of Evidence.
 {¶ 9} "II. The Defendant-appellant Was Denied His Right To A Fair Trial When The Court Permitted The State To Introduce And Admit Tape Recordings Over The Objection Of The Defendant, Which Were Partial And/or Edited By The Police And Not The Complete And Entire Tape.
 {¶ 10} "III. Defendant-appellant Was Denied His Right To A Fair Trial By The Prosecutor's Deliberate Violation Of The Trial Court's Order Not To Refer To Or Elicit Testimony As To Any Suspicions The Police Had Regarding The Investigation Of The Appellant As It Related To The Charges Of Illegal Drug Activity From 1997 To The Time Of Trial.
 {¶ 11} "IV. The Trial Court Erred When It Denied The Defendant-appellant's Request To Restrict The State On Count Two To A Specific Jury Instruction Limiting The Sale Of Contraband To The Time Period Specified In The Bill Of Particulars Which Violated The Defendant's Rights As Guaranteed Under The Information, Fair Trial, Assistance Of Counsel And Due Process Clauses Of The Sixth AndFourteenth Amendments To The United States Constitution.
 {¶ 12} "V. The Trial Court Erred In Its Judgment Because The Jury's Verdict Was Against The Manifest Weight Of The Evidence.
 {¶ 13} "VI. Appellant Was Denied Effective Assistance Of Counsel In Violation Of His Rights Pursuant To The Sixth AndFourteenth Amendments To The United States Constitution And Article I, Section 10 Of The Ohio Constitution."
 I {¶ 14} In the first assignment of error, appellant argues that the admission of tape recordings of the second drug transaction (November 1 — November 2, 2000) denied appellant a fair trial. In essence, appellant argues that the portion of the tape recordings in which the informant and another person, identified as Marlon Blue, discuss appellant's whereabouts and the length of time it was taking appellant to deliver the cocaine was more prejudicial than probative, in violation of Evid.R. 403.
 {¶ 15} Evid.R. 403 vests a trial court with discretion to determine whether the probative value of proffered evidence is substantially outweighed by the danger that it is prejudicial.[3] SeeState v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. We, as a reviewing court, will not interfere with the trial court's balancing of probativeness and prejudice unless the trial court has clearly abused its discretion and materially prejudiced appellant. State v. Slagle,65 Ohio St.3d 597, 601, 605 N.E.2d 916 (citing State v. Hymore (1967),9 Ohio St.2d 122, 128, 224 N.E.2d 126, 130). We note the term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Xie (1992), 62 Ohio St.3d 521, 585 N.E.2d 715; State v.Moreland (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.
 {¶ 16} In this case, without addressing whether the trial court abused its discretion, we find that appellant was not materially prejudiced by the admission of the portions of the tape recordings that included conversations between appellant and other persons, including Chris's conversation with Marlon Blue.[4] The tape recordings in question also include the conversations between appellant and Chris in which Chris purchased cocaine from appellant. Two Alliance Police Detectives identified appellant's voice on the tape recording. Chris testified that appellant sold him the cocaine. A vehicle identical to appellant's was seen leaving the area after the sale. In light of such strong evidence against appellant, the conversations between Chris and others did not materially prejudice appellant.
 {¶ 17} Appellant's first assignment of error is overruled.
 II {¶ 18} In appellant's second assignment of error, appellant contends that he was denied his right to a fair trial when the trial court admitted into evidence, over trial counsel's objection, tape recordings which were recordings of only portions of the entire time period over which the drug sales occurred. We disagree.
 {¶ 19} The police detectives involved in the investigation testified that Chris was wired for surveillance throughout both drug transactions and that there was continuous monitoring of the audio transmission. The detectives testified that the audio transmission was only recorded when Chris made contact with another person or spoke. Therefore, despite the fact that the first transaction took approximately two and one half hours and the second transaction took over 24 hours, the tape recordings admitted at trial were much shorter in duration.
 {¶ 20} Appellant argues that the partial recordings denied him a full opportunity to cross examine the State's witnesses and may have resulted in the exclusion of exculpatory material. However, the record does not support appellant's contentions.
 {¶ 21} Appellant had an opportunity to cross examine the detectives regarding the un-recorded time periods. Further, the possibility that there was exculpatory evidence to be heard which was not recorded is not supported by the record. The detectives testified that they recorded all contacts that Chris had with people, whether in person or over the telephone. In addition, the tape recordings demonstrate that the extended nature of the transactions was the result of appellant's delays in providing the drugs to Chris and not the result of manipulation by the police or Chris.
 {¶ 22} This court recognizes that there could be potential dangers of abuse in allowing law enforcement to selectively record a transaction or edit or splice recordings without oversight. However, under the circumstances of this case, we cannot say that the trial court abused its discretion in admitting the tape recordings into evidence.
 {¶ 23} Appellant's second assignment of error is overruled.
 III {¶ 24} In the third assignment of error, appellant argues that he was denied his right to a fair trial by the Prosecutor's misconduct when the prosecutor deliberately violated the trial court's pretrial order not to refer to or elicit testimony concerning any suspicions the police may have had that appellant was involved in illegal drug activity prior to the instant charges being brought. We find that even if the Prosecutor's actions were misconduct, appellant was not denied a fair trial.
 {¶ 25} The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165, 55 N.E.2d 293; State v. Smith (1984),14 Ohio St.3d 13, 14-15, 470 N.E.2d 883. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives the defendant of a fair trial." State v. Apanovitch (1987),33 Ohio St.3d 19, 24, 514 N.E.2d 394. The prosecutor's conduct must be considered in the context of the entire trial. See Darden v. Wainwright
(1986), 477 U.S. 168, 181-182, 106 S.Ct. 2464, 91 L.Ed.2d 144; Donnellyv. DeChristoforo (1974), 416 U.S. 637, 643-645, 94 S.Ct. 1868,40 L.Ed.2d 431.
 {¶ 26} On the first day of trial, the trial court granted appellant's pretrial motion to exclude any evidence regarding any other crimes, wrongs, acts or suspicions the police may have had during the time period of 1997 to present.[5] Appellant argues that the Prosecution deliberately sought to elicit such evidence on redirect examination when the Prosecutor asked the following questions to Detective Griffith, one of the investigating officers:
 {¶ 27} "Q. You were familiar with Thomas Sampson prior to this incident, correct?
 {¶ 28} "A. Yes, sir.
 {¶ 29} "Q. Were you familiar with him being involved in drug activities?
 {¶ 30} "A. Yes, sir.
 {¶ 31} "MR. LODICO: Objection.
 {¶ 32} "Q. And had you been involved in investigating him for those drug activities?
 {¶ 33} "MR. LODICO: Objection.
 {¶ 34} "THE COURT: Sustained." Transcript of Proceedings, Vol. I, pgs. 227-228.
 {¶ 35} After those questions, a bench conference was held. During the bench conference, the Prosecutor argued that defense counsel had opened the door to questions to "what type of person" appellant was and whether the detective could actually recognize appellant's voice.[6]
The trial court agreed and permitted the Prosecutor to ask the following, additional questions of Detective Griffith:
 {¶ 36} "Q. Sergeant Griffith, you indicated during cross-examination that Thomas Sampson ran or owned a bar in the city of Alliance; is that correct?
 {¶ 37} "A. Correct.
 {¶ 38} "* * *
 {¶ 39} "Q. What period of time has he been involved in running that establishment?
 {¶ 40} "A. That I'm aware of probably late 1999 through late 2000 I would say.
 {¶ 41} "Q. And during that period of time have you been involved in drug investigations of that bar?
 {¶ 42} "A. Yes, sir.
 {¶ 43} "Q. How often?
 {¶ 44} "A. Um, at least ten.
 {¶ 45} "Q. And during that period of time have you also been involved in investigating Thomas Sampson for his involvement with drug activities?
 {¶ 46} "A. Yes, sir." Transcript of Proceedings, pgs. 230-231.
 {¶ 47} Defense counsel did not object to the above line of questions. Further, appellant does not challenge these questions and answers on appeal nor argue that the trial court erred when it ruled that defense counsel had opened the door to these questions.
 {¶ 48} The trial court permitted the Prosecutor to elicit evidence regarding the police's prior suspicions against appellant without objection or appeal. When the challenged questions are reviewed in light of the unchallenged questions asked and answered by the Prosecutor, it is clear that appellant was not prejudiced by the two questions challenged on appeal. As such, we find that appellant has failed to demonstrate he is entitled to relief for prosecutorial misconduct.
 {¶ 49} Appellant's third assignment of error is overruled.
 IV {¶ 50} In the fourth assignment of error, appellant argues that the trial court erred when it denied appellant's request to restrict the State on count two, the November 1 — 2, 2000 sale, to a specific jury instruction limiting the sale of the cocaine to the time period specified in the bill of particulars. In essence, appellant contends that the trial court should have given a jury instruction that limited the jury's consideration to the alleged sale of cocaine, to the exclusion of any offers to sell in the future.
 {¶ 51} Appellant was indicted on two counts of trafficking cocaine which is defined as the sale of cocaine or the offer to sell cocaine. See R.C. 2925.03(A). The bill of particulars alleged that appellant sold cocaine to a confidential informant in a transaction that began on November 1, 2001, when appellant took money to obtain cocaine for the informant and concluded on November 2, 2001, when appellant provided cocaine to the informant.
 {¶ 52} In this case, the trial court gave the jury the definition of the offense, i.e. the sale or offer to sell cocaine and the definition of "sale" provided in R.C. 2925.01 and 3719.01.[7] That definition includes offers to deliver, exchange or transfer.
 {¶ 53} A defendant is entitled to a bill of particulars setting forth the ultimate facts upon which the state expects to rely in establishing its case. State v. Miller (1989), 63 Ohio App.3d 479,579 N.E.2d 276. Further, jury instructions are to be tailored to the facts of each case and patterned instructions must not be slavishly followed. State v. Giles (Feb. 24, 1993), Ashland App. No. CA-1101, 1993 WL 49015 (citing Avon Lake v. Anderson (1983), 10 Ohio App.3d 297,462 N.E.2d 188, paragraph three of the syllabus).
 {¶ 54} An appellate court reviews a trial court's instructions to the jury under an abuse of discretion standard. See State v. Wolens
(1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. An abuse of discretion is "more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." Steinerv. Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855, paragraph two of the syllabus.
 {¶ 55} In this case, the bill of particulars was limited to the actual sale of cocaine to Chris, the confidential informant. However, we decline to decide if the trial court abused its discretion when it instructed the jury. We once again find that appellant was not prejudiced by the instructions given, even if error occurred.
 {¶ 56} A review of the record demonstrates that while the jury did hear evidence of the future offers and the prosecution did mention the future offers in a limited fashion during closing argument, the Prosecution did not ask the jury to convict appellant based upon such offers. The prosecution based its proof and arguments for conviction upon the actual sale of cocaine to appellant, as described in the bill of particulars. Further, the evidence against appellant in regard to the actual sale of cocaine was overwhelmingly strong.
 {¶ 57} Thus, we find that even if there was error, which we decline to find, there was no prejudice to appellant.
 {¶ 58} Appellant's fourth assignment of error is overruled.
 V {¶ 59} In the fifth assignment of error, appellant contends that the jury's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 60} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus at paragraph one.
 {¶ 61} In this case, appellant was charged with two counts of trafficking in cocaine, in violation of R.C. 2925.03(A). Revised Code2925.03(A) states as follows, in pertinent part: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance . . ."
 {¶ 62} Construing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that appellant committed the offenses. Chris, the confidential informant, testified that appellant sold cocaine to him on October 26, 2000, and, through an extended transaction, on November 1 through November 2, 2000. Chris was wired allowing Alliance police detectives to monitor the entire transactions. Two of the three detectives who monitored the transactions testified that they had repeatedly heard appellant's voice and recognized the voice of appellant as the person selling drugs to Chris.[8] The detectives recorded relevant portions of the transactions and those recordings were played for the jury. One of the detectives involved, Detective Griffith, was familiar with appellant's vehicle and saw appellant in his vehicle in the vicinity of the first sale immediately after the sale concluded. Another detective involved, Detective Bartolet, saw a White Lexus identical to appellant's White Lexus leave the area of the sale after the second sale concluded.
 {¶ 63} We find that appellant's convictions for trafficking in cocaine were not against the manifest weight of the evidence. Upon our review of the evidence as a whole, we cannot say that the jury lost its way so as to create a manifest miscarriage of justice.
 {¶ 64} Appellant's fifth assignment of error is overruled.
 VI {¶ 65} In the sixth assignment of error, appellant claims that he was denied effective assistance of trial counsel. We disagree.
 {¶ 66} A claim for ineffective assistance of counsel requires a two-prong analysis. The first prong is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965 (citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180). The United States Supreme Court and the Ohio Supreme Court have both held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, 42 Ohio St.3d at 143
(citing Strickland, 466 U.S. at 697).
 {¶ 67} Specifically, appellant contends that trial counsel violated his duties to appellant in the following ways:
 {¶ 68} "A) Counsel failed to move the Trial Court pursuant to rule of evidence [sic] 403 to voir dire the testimony of [Chris] outside the hearing of the jury in order to establish the lack of authenticity of the tape recordings based upon the following: (a) the editing and deleting of the tape recordings by the police which is tantamount to splicing and excluding exculpatory material; and, (b) the lack of foundation based on the inability of the state's witnesses to satisfactorily identify the voice on the tape recording as the appellant's voice; both of which are set forth in Assignments of Error 1 and 2, supra.
 {¶ 69} "B) Counsel failed to move that certain portions of the tape recordings be stricken from evidence pursuant to rules of evidence [sic] 402, 403 and 802, as set forth in Assignments of Error 1 and 2, supra.
 {¶ 70} "C) Counsel failed to request that the Judge give an immediate curative instruction each and every time the Prosecution elicited other wrongs and acts conduct [sic] regarding the Appellant as set forth in Assignment of Error 3, supra.
 {¶ 71} "D) Counsel failed to compel the Prosecution to produce the daily logs and overtime records of the Alliance Police Department Detectives who conducted the surveillance of the controlled drug buys for October 26th and November 1st and 2nd of 2000.
 {¶ 72} "E) Counsel failed to adequately investigate the case due primarily to the following: (1) his failure to interview Defendant-Appellant's witness, such as Marlon Blue. See Exhibits "A and B" attached hereto; (2) his failure to investigate the number of White Lexus that are registered in the state [sic] of Ohio; and (3) His failure to investigate the atmospheric weather conditions on the dates of the drug traffics as indicated in the indictment.
 {¶ 73} "F) Counsel failed to adequately cross examine the State's witnesses regarding the failure of the Canton-Stark County Crime Laboratory Report Nos: 72645 and 72814 were [sic] the reports lacked the suspect name and was inconsistent with the location indicated in the Bill of Particulars. . . .
 {¶ 74} "G) Counsel rested without putting on any evidence, such as (1) the testimony of Marlon Blue who would have testified to the fact that he had no knowledge of the Defendant-Appellant possessing or trafficking in illegal drugs at any time and that Marlon Blue never had any conversation with [Chris] regarding the same; (2) the atmospheric weather conditions on the dates of the alleged crime; and (3) the number of White Lexus which are registered in the State of Ohio."
 {¶ 75} First, we note that some of the issues raised rely upon information not found in the record generated in the trial court. This court may only consider the record as created in the trial court. This court cannot consider affidavits or other evidence offered to this court but not found in the record below.
 {¶ 76} Second, we find the second prong of the Strickland test dispositive. Upon review, we find that appellant was not prejudiced by any alleged error. Chris testified that he bought cocaine from appellant on both occasions as stated in the indictment. Chris was wired for audio transmission throughout both transactions. Police detectives testified that they monitored the entire transactions and recognized appellant's voice as the person selling the cocaine. Any contact Chris had with another person was recorded by the police and played for the jury. Appellant or a vehicle identical to appellant's vehicle was seen in the vicinity after each sale. In the face of this overwhelming evidence, we find none of the alleged ineffective assistance of counsel violations to be prejudicial.
 {¶ 77} Therefore, appellant's sixth assignment of error is overruled.
 {¶ 78} The judgment of the Stark County Court of Common Pleas is hereby affirmed.
Hoffman, P.J. and Boggins, J. concur
[1] The confidential informant is referred to by a pseudonym and not by his or her real name.
[2] State v. Sampson, Stark App. No. 2001CA00206, 2002-Ohio-1668.
[3] "(A) Exclusion mandatory
"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 403.
[4] A review of the tapes reveal that Chris had conversations with others that had no prejudicial effect whatsoever.
[5] Evidence Rule 404(B) provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, it is possible for the defense to "open the door" to such testimony. "Generally, the prosecution is forbidden to introduce initially evidence of the accused's bad character, unless and until the accused gives evidence of his good character." State v. Lytle
(1976), 48 Ohio St.2d 391, 401-402, 358 N.E.2d 623. Generally, introduction of evidence by accused to prove traits of character tending to make it improbable that he could have committed crime charged opens door for state to prove traits tending to show inclination or capacity for crime charged. State v. Hale (1969), 21 Ohio App.2d 207, 216,256 N.E.2d 239. "However, a certain amount of discretion is vested in the trial court as to the extent of an examination into the character or reputation of the accused." Id. (citing Hanoff v. State,37 Ohio St. 178).
[6] In questioning Detective Griffith regarding his ability to recognize appellant's voice, defense counsel repeatedly raised the issue of the Detective's and appellant's prior contacts. In so doing, defense counsel asked the Detective pointed, direct questions regarding the Detective's knowledge and investigation of appellant's past involvement with drug activity. Transcript of Proceedings, Vol. I, pgs. 211-214.
[7] Chapter 2925, Drug Offenses, states that the term "sale" will have the same meaning as defined in R.C. 3719.01. R.C. 2925.01. Thus, the definition of "sale" includes: "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 3719.01.
[8] The third detective testified that he had never heard appellant's voice so he could not identify the voice on the tape.