OPINION
{¶ 1} Defendant, Christopher Rodgers, appeals from his conviction and sentence for felonious assault.
 {¶ 2} The State's evidence shows that on August 17, 2003, Defendant became involved in an argument with his wife, Sharyta Rodgers, because she had been gone all night the previous evening and had not told Defendant where she had been. Defendant became angry and began choking Sharyta while she was lying on the bed. When Defendant snapped Sharyta's head up off the bed while applying a choke hold, she suffered a fractured neck. Sharyta's neck and back began hurting and she could not move her right arm. Sharyta yelled for her daughter, Courtney, to call the police. Defendant responded by threatening to kill Sharyta. Eventually, Sharyta was able to call a friend, Darryl Hayden, who immediately came over to the Rodgers' home.
 {¶ 3} Sharyta and Defendant told Hayden the truth about what had occurred and he told Defendant to call 911. Later, Defendant admitted to Hayden that he had injured Sharyta in a fit of anger. Sharyta and Defendant agreed that they would tell medics and people at the hospital that Sharyta's injuries were accidental, caused by the two of them wrestling around and falling off the bed. Sharyta did not initially tell the truth about what happened because she was afraid of Defendant. Only after Sharyta was released from the hospital and was safe at her mother's home did she finally report this incident to police as an assault. Sharyta suffered a broken neck which required surgery, and she had to wear a neck brace for several weeks. At the time of trial Sharyta was still experiencing pain and numbness in her right arm, chronic nosebleeds and migraines, loss of mobility in her neck, and she had developed arthritis.
 {¶ 4} Defendant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1). The matter proceeded to a jury trial. The theory of the defense at trial was that Sharyta's injuries were the accidental result of horseplay between her and Defendant just as she initially reported to medics and hospital personnel. The jury did not believe Defendant's version of the events, however, and found him guilty as charged. The trial court sentenced Defendant to an eight year term of imprisonment.
 {¶ 5} Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 6} "Appellant was denied a fair trial and due process of law due to numerous instances of ineffective assistance of trial counsel."
 {¶ 7} In order to demonstrate ineffective assistance of trial counsel, Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id.
Moreover, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.
 {¶ 8} Defendant argues that his trial counsel performed in a
 {¶ 9} constitutionally deficient manner because during his inept cross-examination of the State's witnesses he repeatedly elicited testimony that was very damaging to Defendant. Defendant first complains about this incident that occurred during cross-examination of the victim.
 {¶ 10} "Q. All right. Now, I haven't heard you testify that your husband punched you; am I correct?
 {¶ 11} "A. No, on that day, no." (T. 78).
 {¶ 12} Defendant argues that because the victim never testified that Defendant punched her during this assault, there is no justifiable reason for asking this question. Moreover, the victim's reply was devastating because it implied that although Defendant did not punch her during this incident, he had done so on other occasions. Furthermore, defense counsel never asked the trial court to instruct the jury to disregard the victim's remark implying prior abuse.
 {¶ 13} A review of the trial record as a whole discloses that this remark by the victim did not convince the jury that there had been prior instances of abuse by Defendant because the jury requested that some of the subsequent witnesses be asked if there was any previous history of abuse, which the trial court refused to do. Accordingly, we conclude that the impact of the victim's answer to defense counsel's question was not as prejudicial as Defendant would have this court believe, and certainly does not rise to the level of prejudice as defined by Strickland. Given the other overwhelming evidence of Defendant's guilt, there is no reasonable probability that Defendant would have been acquitted but for defense counsel asking the victim this question about punching. Ineffective assistance of counsel has not been demonstrated.
 {¶ 14} Defendant next complains about another incident during cross-examination of the victim:
 {¶ 15} "Q. Wasn't he visiting you in the hospital with your kids?
 {¶ 16} "A. It wasn't a visit. He offered me money to not talk to the police when he came to the hospital." (T. 106).
 {¶ 17} Once again defense counsel did not ask the trial court to instruct the jury to disregard the victim's inflammatory remark about Defendant's attempt to bribe her.
 {¶ 18} Obviously, the victim's answer was not responsive to defense counsel's question which was designed to demonstrate that Defendant was a concerned, caring husband. Defense counsel's question did not invite the inflammatory response the victim gave, which could not reasonably be foreseen, and therefore counsel did not perform deficiently by asking that question. Ineffective assistance of counsel has not been demonstrated.
 {¶ 19} Finally, Defendant complains about this incident during cross-examination of the victim:
 {¶ 20} "Q. And this in spite of the fact that you say that somebody was trying to bribe you with money in order not to tell the truth; is that correct?
 {¶ 21} "A. That's correct." (T. 109).
 {¶ 22} Defendant argues that by eliciting this testimony defense counsel established that Defendant had committed other uncharged offenses such as bribery.
 {¶ 23} In order to put this question by defense counsel in its proper context, we note that the victim had admitted on cross-examination that while in the hospital she told a social worker that this was not an assault and there had been no prior abuse by Defendant. Pursuant to a question by defense counsel, the victim acknowledged that her conversation with the social worker was an opportunity for her to corroborate an anonymous telephone call the hospital received reporting that the injuries Sharyta Rodgers received were the result of an assault by Defendant. The victim refused, however, to corroborate that anonymous claim when talking to the social worker, and defense counsel cast doubt upon the credibility of the victim's claim at trial that her injuries were in fact the result of an attack by Defendant, by pointing out that the victim denied being assaulted despite her claim that Defendant tried to bribe her to not tell the truth. Viewed in its proper perspective for impeachment purposes, defense counsel did not perform deficiently by asking this question. Ineffective assistance of counsel has not been demonstrated.
 {¶ 24} Defendant next complains about an incident that occurred during cross-examination of the victim's friend, Darryl Hayden:
 {¶ 25} "Q. Why was Chris coming to you, her best friend, to tell you this?
 {¶ 26} "A. Because he wanted me to talk to Sharyta and to get her to drop the charges against him. (T. 158)."
 {¶ 27} Defense counsel's question sought an explanation for why Defendant, after being arrested for this offense, would go to Sharyta's best friend to admit that when she angered him he lost control and injured her. By the time defense counsel asked Hayden this question, Hayden had already testified on direct examination that Defendant had admitted to him on two separate occasions that he was responsible for Sharyta's injuries: once on the day of the incident and again during a conversation they had in September 2003. Given Defendant's admissions of guilt to Hayden, we clearly cannot say that Hayden's testimony that Defendant wanted him to try to convince Sharyta not to press charges created such prejudice that a reasonable probability exists that Defendant would have been acquitted but for this testimony by Hayden. Ineffective assistance of counsel has not been demonstrated.
 {¶ 28} Defendant further complains about this incident during the cross-examination of Darryl Hayden:
 {¶ 29} "Q. And so she was the one that actually was filling out the form while you were there?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. Even though you were the one that signed it?
 {¶ 32} "A. Because she was not able.
 {¶ 33} "Q. She had something the matter with her hand.
 {¶ 34} "A. Right." (T. 167).
 {¶ 35} Defendant argues that this testimony established that Hayden had to sign Sharyta Rodger's treatment plan because she had an injured hand.
 {¶ 36} Given Sharyta's testimony about the very serious neck injury she suffered as a result of Defendant's attack, this testimony by Hayden that Sharyta's hand was injured was not so prejudicial that a reasonable probability exists that Defendant would have been acquitted but for Hayden's testimony about Sharyta's injured hand. Ineffective assistance of counsel has not been shown.
 {¶ 37} Defendant next complains about this incident that occurred during cross-examination of Sharyta's mother, Linda Burrs, after she testified that Sharyta told her at the hospital that Defendant intentionally hurt her:
 {¶ 38} "Q. All right. Are you able — did she explain to you why she was telling the people at the hospital it was the result of horsing around while she was telling you that it was a result of something else?
 {¶ 39} "A. Because he had threatened to kill her.
 {¶ 40} "Q. Okay. And when did he supposedly threaten to kill her, according to you? What did she tell you?
 {¶ 41} "A. During the incident.
 {¶ 42} "Q. Okay.
 {¶ 43} "A. And he told her that — because she screamed for Courtney to call the police. And he said, call who? He said, I'll kill you. That's what she said." (T. 204).
 {¶ 44} This testimony by Burrs was not prejudicial because it was merely cumulative to previous testimony given by Sharyta regarding Defendant's threat to kill her during this assault if she had her daughter call the police. There is no reasonable probability that Defendant would have been acquitted but for this testimony by Burrs because Sharyta had already given the same testimony. Ineffective assistance of counsel has not been demonstrated.
 {¶ 45} Defendant also complains about this incident during cross-examination of Linda Burrs:
 {¶ 46} "Q. Okay. And did you make any move at all to remove the grandchildren from his house having gotten this information on the 18th?
 {¶ 47} "A. I talked to her about that.
 {¶ 48} "Q. Okay. You forgot to tell us this. Okay. And what did they — what did she say about it?
 {¶ 49} "A. She said she didn't believe he would hurt the children.
 {¶ 50} "Q. Okay. And so you allowed the children as grandma to stay over with the father who allegedly made these statements.
 {¶ 51} "A. As I was — but I was checking on them very frequently." (T. 205-206).
 {¶ 52} During cross-examination of Burrs, defense counsel established that because of Defendant's assault upon Sharyta and his threat to kill her, Burrs was concerned for the safety of her daughter, Sharyta, and that of her grandchildren as well. Yet, during the entire time that Sharyta was in the hospital, her children remained at home in the care of their father, Defendant. In pursuing this line of inquiry with Burrs, defense counsel established that despite Sharyta's claim that Defendant intentionally injured her, Sharyta was not concerned that Defendant might pose a danger to their children, and nobody attempted to have those children removed from Defendant's care. Defense counsel's attempt to cast doubt upon the validity of Sharyta's claim does not constitute deficient performance. In any event, this testimony by Burrs that she checked on the welfare of her grandchildren frequently after she learned that their father had injured their mother was not so prejudicial that a reasonable probability exists that Defendant would have been acquitted but for this testimony. Ineffective assistance of counsel has not been demonstrated.
 {¶ 53} Defendant next complains about the cross-examination of the State's domestic violence expert, Margene Robinson. In questioning Robinson about what factors make up the dynamics of domestic violence, defense counsel focused upon the importance of a prior history of violence in determining if domestic violence exists:
 {¶ 54} "Q. Now that presupposes a situation where there is domestic violence to begin with, doesn't it? I mean, you're talking about a known case of domestic violence. What would it take to put that characterization on somebody or a situation of domestic violence versus a simple incident that is — that could be accidental in nature that forms a basis for a charge of alleged domestic violence?
 {¶ 55} "A. Well, we would look at prior history.
 {¶ 56} "Q. Okay. And that's pretty important, isn't it?
 {¶ 57} "A. Yes, sir.
 {¶ 58} "Q. Prior history. Okay. You don't become a monster in a particular day. It takes a lot of —
 {¶ 59} "A. It takes some time." (T. 245).
 {¶ 60} In determining whether this particular incident was an accident or part of an ongoing domestic violence problem in the Rodgers' home, defense counsel's decision to focus upon the importance of a prior history of violence appears to have been sound trial strategy because there was no evidence introduced that Defendant had previously assaulted Sharyta, which militates against a finding of domestic violence. The jury's subsequent proposed question for Defendant's mother, Naomi Rodgers, asking if there had been any history of abuse, demonstrates that the jury was unsure whether Defendant had previously abused Sharyta. Defense counsel's performance was not deficient and ineffective assistance of counsel has not been demonstrated.
 {¶ 61} Finally, Defendant complains about defense counsel's direct examination of the sole defense witness, Defendant's mother, Naomi Rodgers:
 {¶ 62} "Q. So using that as a guideline of August the 17th, when did you first become aware that there had been a problem in August that involved Chris and your daughter — daughter-in-law?
 {¶ 63} "A. Chris and my granddaughter, Carissa, came to the house.
 {¶ 64} "Q. Okay.
 {¶ 65} "A. And my — Chris went out to the car for something and my granddaughter, Carissa, said daddy hurt mommy." (T. 268).
 {¶ 66} Defendant complains that this testimony that defense counsel elicited from his mother was so damaging that it became the theme of the prosecutor's closing argument:
 {¶ 67} "But today I want to take one thing out of order, because one thing that came up yesterday that I think was very, very important was the statement of Carissa. One of the few things that was actually said that made any sense yesterday from Ms. Rodgers was, Carissa told me on the day that Sharyta was to get out of the hospital, daddy hurt mommy. Not it was an accident. Not mom got hurt in an accident. Not mom was wrestling. Not mom fell of the bed. Daddy hurt mommy. Out of the mouths of babes. Children will tell you these types of things.
 {¶ 68} "If you recall when Sharyta was on the stand she told you that she called out to her daughter Carissa. Call the police. Call who? I'll kill you. That's what he said. Daddy hurt mommy. That's what this is about. (T. 329).
 {¶ 69} "That's all I have to prove, he committed a crime. Daddy hurt mommy. He broke her neck." (T. 354).
 {¶ 70} Given the overwhelming evidence of Defendant's guilt, particularly the testimony by Sharyta Rodgers and Darryl Hayden, we cannot conclude that a reasonable probability exists that Defendant would have been acquitted but for Naomi Rodgers' testimony regarding Carissa's statement. Prejudice, as defined by Strickland, has not been demonstrated and thus ineffective assistance of counsel has not been shown.
 {¶ 71} We have carefully reviewed each one of the multiple instances where Defendant complains about defense counsel's performance in examining the witnesses, and we conclude that in each instance either counsel's performance was not deficient or the performance, if deficient, did not result in any prejudice to Defendant when judged under the Strickland standard. Accordingly, ineffective assistance of counsel has not been shown.
 {¶ 72} The first assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR
 {¶ 73} "Appellant was denied a fair trial and due process of law due to numerous errors by the trial court."
 {¶ 74} The court erred in excluding Appellant's video and stillphotography demonstrating that the complainant could carry multiple dishesas a waitress despite her claim of incapacitating injuries.
 {¶ 75} A trial court has broad discretion with respect to the admission or exclusion of evidence and its decision in such matters will not be disturbed on appeal absent an abuse of discretion that causes material prejudice. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Andrew (1980), 62 Ohio St.2d 151.
 {¶ 76} In order to impeach Sharyta Rodger's testimony regarding the seriousness of the injuries she sustained, and demonstrate that her injuries were not permanent, Defendant sought to introduce at trial a video that was taken several months after this incident, depicting Sharyta working as a waitress at Hooters, carrying dishes on both arms. The trial court refused to admit the video or a still photograph depicting Sharyta at work. Defendant argues that the trial court erred in excluding the video because it was relevant evidence on the issue of whether Sharyta suffered serious physical harm. We disagree.
 {¶ 77} Serious physical harm is defined in R.C. 2901.01(A)(5):
 {¶ 78} "Serious physical harm to persons" means any of the following:
 {¶ 79} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 80} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 81} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 82} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 83} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 84} Without question the evidence demonstrates that Sharyta suffered serious physical harm. Her neck was fractured, which required hospitalization, and she underwent surgery to insert a metal plate between the vertebrae in her neck. Sharyta wore a neck brace for several weeks, she has lost some mobility in her neck, and she has developed arthritis in her neck. Defendant's proposed evidence, the video showing Sharyta working as a waitress at Hooters several months after Defendant attacked her, does not rebut or call into question the fact that Sharyta suffered serious physical harm. Thus, the video has no impeachment value. At best the video demonstrates that Sharyta recovered well enough from her injuries to be able to work as a waitress. That is not inconsistent with Sharyta's trial testimony that she works as a waitress at Hooters, a job that sometimes requires heavy lifting, and that her injuries only occasionally affect her ability to do her job. Simply put, the video does not impeach Sharyta's testimony, and has no value for impeachment purposes. Accordingly, the trial court did not abuse its discretion in excluding this evidence.
 {¶ 85} This assignment of error has no merit.
 {¶ 86} The Court erred in denying a mistrial when the jury was toldthat Appellant was a car thief.
 {¶ 87} The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion that has adversely affected substantial rights of the accused such that a fair trial is no longer possible. State v. Garner, 74 Ohio St.3d 49,1995-Ohio-168; State v. Glover (1988), 35 Ohio St. 3d 18; State v.Reynolds (1988), 49 Ohio App.3d 27.
 {¶ 88} During cross-examination of the victim, Sharyta Rodgers, defense counsel inquired whether Defendant had a job and was working at the time of his arrest. Sharyta responded that Defendant had been unemployed for several years. Not content with that answer, defense counsel inquired further about Defendant's employment history which resulted in this exchange:
 {¶ 89} "Q. Did your husband work for Bob's Auto to your knowledge?
 {¶ 90} "A. To my knowledge, Christopher stole cars." (T. 140).
 {¶ 91} Defendant requested a bench conference and moved for a mistrial. The trial court denied that request. No curative instruction was requested by defense counsel and none was given by the trial court. After a brief recess, cross-examination of Sharyta continued.
 {¶ 92} Defendant argues that the trial court erred in denying his request for a mistrial after the victim told the jury that Defendant was a car thief. The State responds that Defendant invited this error by refusing to accept Sharyta's earlier answer to his question about Defendant's employment. While Defendant's question about whether Defendant worked for a specific employer did not invite Sharyta's testimony that Defendant stole cars, that answer being unresponsive to the specific question asked, it is also true that Sharyta's response, to some extent, was the result of defense counsel's own excesses in pressing this witness about a collateral matter such as Defendant's employment.
 {¶ 93} In any event, Sharyta's reference to Defendant stealing cars was brief and isolated, and did not reoccur during the trial. Given the overwhelming evidence of Defendant's guilt, including Sharyta's testimony and Defendant's confession to Sharyta's friend, Darryl Hayden, we cannot say that Sharyta's fleeting remark deprived Defendant of a fair trial. The trial court did not abuse its discretion in denying Defendant's request for a mistrial.
 {¶ 94} This assignment of error has no merit.
 {¶ 95} The Court erred in denying a mistrial when Appellant'smother-in-law told the jury that before this incident he had promised hernever to hit the complainant (her daughter) again.
 {¶ 96} During her direct examination Sharyta's mother, Linda Burrs, testified that she first talked to Defendant on August 17, 2003, the day of the incident, about what had happened to her daughter. Burrs next talked to Defendant at the hospital on August 19, 2003, and he gave her a different version of what had happened to Sharyta. The prosecutor then asked Burrs what Defendant told her on the 19th, about what happened. That prompted this response:
 {¶ 97} "A. When I got to the hospital — well, I was at the hospital because I had to get the car fixed. Well, I don't want to get into all that. But — and while I was there he came. And I told him we need to have a little pow-wow. And I asked the nurse for a private conference room. And she provided one. And I told him come with me. And first of all I asked him why he lied to me. And he said he lied to me because he knew I was going to be very upset with him. And I started crying. I was very upset. And I said to him, I said, you promised me you were never going to hit my daughter again. I said, you promised me." (T. 185-186).
 {¶ 98} Defendant asked the court to strike Burrs' comment about Defendant having previously promised never to hit Sharyta again, as that implied prior instances of abuse. Defendant requested a curative instruction and also moved for a mistrial. The trial court denied the mistrial request but ordered the remark stricken and instructed the jury not to consider the remark for any purpose.
 {¶ 99} Once again Defendant argues that the trial court erred in denying his request for a mistrial. As with the other remark that prompted the first mistrial request, this remark by the witness was a brief, isolated incident that was not repeated during the trial. The trial court struck the remark and immediately instructed the jury not to consider it. A jury is presumed to follow the trial court's curative instructions. State v. Loza (1994), 71 Ohio St.3d 61, 75. In addition, the trial court cautioned the witness not to discuss any prior instances of abuse between Defendant and Sharyta in the course of answering the prosecutor's questions. Under these circumstances, the trial court did not abuse its discretion in denying Defendant's request for a mistrial.
 {¶ 100} This assignment of error has no merit.
 {¶ 101} The Court erred in denying a mistrial based upon thecumulative impact of the witness testimony that Appellant was a car thiefand had hit the complainant on an earlier occasion.
 {¶ 102} Defendant requested a mistrial based upon the cumulative error and impact of both Sharyta's remark that Defendant stole cars and Linda Burr's remark that Defendant had promised her he would never hit Sharyta again. The trial court refused to grant a mistrial.
 {¶ 103} Defendant argues that the trial court erred in denying his request for a mistrial because the fairness of his trial was doubtful due to the cumulative effect of the errors that prompted his two separate mistrial requests. We disagree. Having concluded that the trial court did not err or abuse its discretion in denying Defendant's separate mistrial requests, there is no "cumulative error."
 {¶ 104} This assignment of error has no merit.
 {¶ 105} The Court erred in denying Appellant's request that the jurybe instructed as to the defense of Accident.
 {¶ 106} Defendant's theory of this case was that the original story told by Sharyta to emergency medics and hospital personnel, that her injuries were the result of an accident occasioned by her falling off of the bed while engaging in horseplay with Defendant, was the truth. Accordingly, Defendant requested that the trial court instruct the jury on the defense of an accident. The trial court refused to give an accident instruction. Defendant argues that the trial court erred in refusing to instruct the jury on accident because Sharyta's own statements to medics support that defense and the trial court's refusal to give the accident instruction deprived the jury of the information needed to consider that defense.
 {¶ 107} In reviewing the trial court's refusal to give a requested jury instruction, we apply an abuse of discretion standard. State v.Wolons (1989), 44 Ohio St.3d 64, 68. When requested special instructions submitted by a party are correct, pertinent to the issues before the jury and presented in a timely manner, they must be included, at least in substance, in the general charge. Cincinnati v. Epperson (1969),20 Ohio St.2d 59.
 {¶ 108} Criminal liability is predicated upon two components: the voluntary commission of a prohibited act and the requisite mental culpability or mens rea required for the offense. R.C. 2901.21. Accident is not an affirmative defense. State v. Poole (1973), 33 Ohio St.2d 18. Rather, it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct. State v. Bayes (Dec. 29, 2000), Clark App. No. 00CA0032. By raising the defense of accident defendant denies that the act was intentional or purposeful. State v. Fears, 86 Ohio St. 3d 329,1999-Ohio-111.
 {¶ 109} Defendant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which is not a purposeful offense. Rather, it requires only conduct that is "knowing"; that is, conduct wherein the Defendant, regardless of his purpose, is aware that his conduct will probably cause a certain result or probably be of a certain nature. R.C.2901.22(B). Because Defendant's purpose or intent was irrelevant to that finding and the offense with which he was charged, he was not entitled to a jury instruction on accident and the trial court did not abuse its discretion in failing to give that instruction. Bayes, supra. This assignment of error has no merit.
 {¶ 110} The second assignment of error is without merit. The judgment of the trial court will be affirmed.
Wolff, J. And Donovan, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.